Clapp v. Kenley.

---

JOHN W. CLAPP, Appellant, v. LENA KENLEY and JOHN KENLEY.

Division Two, March 17, 1919.

1. **FRAUDULENT CONVEYANCE:** Subsequent Creditor. The general rule is that a subsequent creditor will not be heard to complain of what his debtor did with his property before the indebtedness accrued. The only exception is that the debtor

Clapp v. Kenley.

at the time he conveyed his property harbored a fraudulent intent to become indebted and to so smuggle and hide it as to prevent the collection of a special debt.

2. ————: In Trust For Another: To Daughter-in-Law. A voluntary conveyance by the owner of forty acres of agricultural land to his young daughter-in-law, without any reservations or conditions, as a home for her and her children by his son, who had wasted in drink and gambling former gifts of personal property to him, was not a conveyance in trust for the son.

3. ————: ————: ————: Knowledge of Son's Indebtedness. A voluntary conveyance by the owner of land to his daughter-in-law, in order that she and her children might have a home, at a time when he knew that a judgment for debt was outstanding against her husband, did not have the effect of creating a trust in favor of her husband's creditors. Knowledge that a conveyance to the son would instantly subject the land to the payment of his judgment debt did not have the effect of making the conveyance to the son's wife one in trust for the son.

4. ————: ————: ————: Increment in Estate: Labor of Husband. The fact that the debtor so labored, managed and dealt with his wife's agricultural lands voluntarily conveyed to her by his father as to cause them to increase in value, does not cause the increment to so far become the property of the husband as to render it liable for his debts. As a matter of law the wife can employ her husband as her agent, and the increment resulting from his labor on her property belongs to her. And as a matter of fact such question cannot arise if the evidence fails, as it does in this case, to show any increment.

5. ————: Failure to Testify: Presumption: Reading Deposition. The rule that a presumption is to be entertained unfavorable to a party who, charged with fraud and present in court, fails to testify, has no application where the deposition of such party is taken by the opposite party and is offered and read at the trial. The adverse party is not entitled to both the testimony and the presumption.

Appeal from Sullivan Circuit Court.—*Hon. Fred Lamb, Judge.*

Affirmed.

*D. M. Wilson* for appellant.

(1) Under the well established practice in this State a creditor has his election to either (a) file a

creditor's bill to charge property fraudulently conveyed, purchased or acquired, with the payment of his debt, or (b) to sell under execution the interest of the debtor and the purchaser then to file his bill to annul the fraudulent deed. Bobb v. Woodward, 50 Mo. 95; Ryland v. Callison, 54 Mo. 513; Zoll v. Soper, 75 Mo. 460; Lionberger v. Baker, 88 Mo. 447; Garrett v. Wagner, 125 Mo. 463; Bradshaw v. Halpin, 180 Mo. 666. (2) The assignee for value of a judgment has all the legal remedies for enforcing it which the original judgment creditor had. Lionberger v. Baker, 14 Mo. App. 353. (3) Under the allegations of fraud set out in the petition and the evidence in the case, the failure of the defendant Lena Kenley to testify, though present in the court room during the whole trial, should be regarded as a strong circumstance against her. Baldwin v. Whitcomb, 71 Mo. 658; Mabary v. McClung, 74 Mo. 591; Insurance Co. v. Smith, 117 Mo. 294; Stephenson v. Kilpatrick, 166 Mo. 262; Schooler v. Schooler, 258 Mo. 83; Nelson v. Hall, 104 Mo. App. 473; Summers v. Keller, 152 Mo. App. 626. (4) Fraud is seldom susceptible of direct proof and in determining whether it exists the chancellor has the right and it is his duty to consider the entire surroundings of the transaction, the relationship of the parties and then make such reasonable inferences as the facts warrant. Loan & Trust Co. v. Browne, 177 Mo. 425; State Bank of West Union v. Keeney, 154 Mo. App. 285. (5) In transactions between parties bearing a close personal relation, such as parent and child, husband and wife, equity applies the most rigid scrutiny when there is a charge that they are in fraud of creditors. Bank v. Fry, 216 Mo. 24; Cole v. Cole, 231 Mo. 236. (6) If the real consideration for the forty acres deeded by Hiram Kenley to Lena Kenley was John Kenley's interest in Hiram's home place then that deed as to the plaintiff was fraudulent in law. Jordan v. Buschmeyer, 97 Mo. 94; Patton v. Bragg, 113 Mo. 595; Halstead v. Mustion, 166 Mo. 488. (7) The deed from Hiram

Kenley to his children made in 1886, they being minors, was an advancement, though he remained in possession of the premises; and he would be liable to account to them for the rents and profits. Rhea v. Bagley, 36 L. R. A. 86; Bogy v. Roberts, 3 Am. St. 211. (8) If the interests of the children are not to be considered as the actual consideration for the lands deeded to them on December 2, 1901, then such deeds being without consideration raise the presumption that they were intended as advancements. Ray v. Leeper, 65 Mo. 470; Lisles v. Huffman, 88 Mo. App. 143; Gunn v. Thurston, 130 Mo. 339. (9) A gift of property to a daughter-in-law is an advancement to the son. Palmer v. Culbertson, 143 N. Y. 213. See also Barber v. Taylor, 9 Dana, 84; Stevenson v. Martin, 11 Bush. 485; Dilley v. Love, 61 Md. 612; Bruce v. Slemp, 82 Va. 358; Roberts v. Coleman, 37 W. Va. 154.

*J. M. Wattenbarger* and *E. B. Fields,* for respondent.

(1) The property being a gift to Lena Kenley could not be subjected to the debts of her husband, John Kenley. Bay v. Sullivan, 30 Mo. 191; Holthaus v. Hornbostle, 60 Mo. 439; Gruner v. Sholtz, 154 Mo. 415. (2) The fact that John Kenley did some of the trading, and that Lena acquired a good deal of personal property, and that he labored on her farms, is not sufficient to set aside the deed. Seay v. Hesse, 123 Mo. 450; Gruner v. Sholtz, 154 Mo. 415; Bank of Tipton v. Adair, 172 Mo. 156; State ex rel. v. Jones, 83 Mo. App. 151. (3) Where the wife was the owner of a farm upon which she resided and which the husband carried on in her name, without an agreement as to compensation, it was held that neither the products of the farm, nor the property taken in exchange therefor, could be attached by creditors of the husband. Gage v. Dauch, 34 N. Y. 293. Cited with approval in Gruner v. Sholtz, 154 Mo. 425. (4) Equity has no jurisdiction to compel a man to work for his creditors. He is not their slave.

If he perversely prefers to work for his wife and child, he had a right to do so, and the courts will not interfere to prevent him from so doing. Gruner v. Sholtz, 154 Mo. 415; Seay v. Hesse, 123 Mo. 457; Tresch v. Wirtz, 34 N. J. Eq. 129; Webster v. Hildreth, 33 Vt. 457; Bank of Tipton v. Adair, 172 Mo. 166. (5) Fraud may be inferred but not presumed, and must be proven. Suspicion is not sufficient. Farmers Bank v. Worthington, 145 Mo. 91; Kilpatrick v. Wiley, 197 Mo. 159. And it cannot stand on presumption alone. Ibid. (6) If there is any doubt as to the honesty of the transaction it is resolved in favor of the defendant. State v. Meysenburg, 171 Mo. 58; Gruner v. Sholtz, Loc. Cit. 424; Dellan v. Renshaw, 26 Mo. 533; Kilpatrick v. Wiley, 197 Mo. 123. (7) The evidence in this case showing as it does just where the consideration of this land came from, there is no room or ground for any presumption of fraud. Bank of Tipton v. Adair, 172 Mo. 156.

FARIS, J.—This is a bill in equity by which it is sought to subject certain lands, the legal title to which is in defendant Lena Kenley, to the payment of a judgment against defendant John Kenley.

Plaintiff is the purchaser at a sale under an execution of the 159-acre tract of land in controversy. The salient facts leading up to this sale run briefly thus: On the 4th day of January, 1900, one Ransom obtained judgment in the circuit court of Sullivan County against defendant for the sum of one thousand dollars, on account of the alleged seduction in May, 1898, of his infant daughter. Shortly thereafter Ransom assigned this judgment to one D. M. Wilson, now counsel for appellant herein. In 1908, Wilson sued on this judgment in order to prevent its lapse by reason of the statutes of repose, and got judgment therein for $1528. In February, 1913, Wilson caused execution to issue, levied on the land in controversy and sold it to

plaintiff herein, who thereupon brought this action, and being cast below, appealed in conventional form.

The facts upon which plaintiff relies to fasten in his favor as a creditor the trust upon the land are neither lengthy nor complicated. Defendants were married to each other in December, 1898, and ever since have been and now are husband and wife. In 1901, Hiram Kenley, the father of defendant John Kenley, conveyed to defendant Lena Kenley forty acres of land. This conveyance was a gift and was bottomed on no valuable consideration whatever. At the same time Hiram gave and conveyed to his daughter Anna and to each of his other sons and daughters a forty-acre tract of land. Giving his reasons for this conveyance to Lena, Hiram said upon the trial this:

"On December 2, 1901, I conveyed the east forty acres of what is known as the Jim Kenley farm to the defendant, Lena Kenley. She is the wife of my son John. I conveyed it to her because I thought she would take care of it and John wouldn't. I think they had one or two children at that time. Prior to that time my son had been gambling and somewhat reckless. He had nothing when I deeded this to his wife that I recollect of. I had given him property along. He had fooled it away and gambled it off and it was all gone. I give him four good horses, two at one time and two at another, a good span of coming two-year-old colts and a span of gray horses that were nice, and they were all gone, and I gave him money besides. I gave her this land in order that she and John Kenley's family might have the benefit of it and he couldn't run through with it."

Afterwards defendants lived and farmed for a few years upon this forty-acre tract which was given to Lena by Hiram. Later Lena bought the tract of forty acres which Hiram had given to his daughter Anna and after holding it awhile sold it at a profit of one thousand dollars. This profit, together with the pro-

ceeds of a sale of live stock from their farm, and the purchase-price, or barter-price, of the original forty acres were used in acquiring the 159 acres of land here in dispute. On the latter tract there was outstanding at the time of the trial a mortgage for the sum of $3800. This mortgage was for money which went to purchase the land. As these various parcels of land were purchased, the titles thereto were taken in the name of Lena, in whose name all deals were made and the farming business carried on.

While these trades were making and farming operations being carried on and live stock being bought and sold and reared, defendant John Kenley lived on the farm with Lena as her husband and acted for her in carrying on and managing all these operations, matters and things. The bank account was carried at all times in the name of Lena, and checks were always made to her for live stock and other products sold. Lena owned, she says, all of the property, both real and personal, and John had nothing and has never had anything, except certain horses, which he says were used up and lost by him, before his marriage, in gambling and riotous living. *Both Lena and Hiram testify that they knew that the judgment on which this proceeding is bottomed was outstanding and unpaid.*

There was no showing upon the trial on the part of plaintiff as to the present value of the 159 acres of land in dispute. Defendant John Kenley says in his testimony that the equity of Lena in this land is worth less than the forty-acre tract of land which his father gave to Lena.

Some other of the facts may become pertinent in the course of the discussion, in which event they will be stated in connection with the matters to which their pertinence is apposite.

I. As we understand the contentions of learned counsel for plaintiff, they are three in number: (a) The conveyance to defendant Lena Kenley by Hiram

Kenley of the original forty-acre tract was a mere conveyance in trust for his son John Kenley;   (b) but if the evidence should not disclose the existence of this trust, then the mere fact of the conveyance to a daughter-in-law, with knowledge in the donor and donee of the son's indebtedness, is sufficient to create a trust in favor of the debtor which will enure to creditors, and (c) that the fact that the debtor labored, managed and dealt with his wife's property so that it increased in value, caused such increment to so far become the property of the husband as to render it liable for his debts.   Other contentions may be made, but we think all such as may in fairness arise upon the record, and all such as are raised in plaintiff's brief, may be easily considered within the compass of the points above set forth.

Some faint suggestion is made of equities accruing to this creditor of John from the fact that on the 6th day of June, 1896, the latter re-conveyed **Prior Conveyance: Contentions.** to Hiram, his father, forty acres of land, which the father had, for purposes of his own, theretofore conveyed to John.   Since, however, the seduction out of which arose the damage suit, and the judgment here sought to be liquidated, did not occur till May, 1898, it is useless to follow up this suggestion.   For the general rule is that a subsequent creditor will not be heard to complain about what his debtor did with his property before the accrual of the indebtedness.   [Coleman v. Hagey, 252 Mo. 102.]   The only exception is that at the time the debtor conveyed his property away, he harbored the fraudulent intent to become indebted and to so hide and smuggle his property as to prevent the collection of the specific debt.   In other words, the conveyance must be part and parcel of the accrual of the indebtedness, a linked conspiracy in a manner of speaking.   Of this, there is not among the proof in the record even the faintest suggestion.

II.   Neither is there any evidence in the record
that the conveyance to Lena Kenley by Hiram of the
original forty-acre tract was intended to be held by
her in trust for her husband.   The con-
*Conveyance in Trust.* veyance by which she took title conveys the
land to her (so far as the record before us
discloses) absolutely, without any reservations or con-
ditions whatever.   All of the testimony in the case
shows that Hiram intended to give her the land out-
right as a home for her and her family.   Both Hiram
and John give as a reason for thus placing the title
that John was disposed in his more youthful years to
drink and gamble.   So, it is clear that any contention
that a trust was created in John, or intended so to be,
must be disallowed in so far as such trust is shown by
any evidence in this record.

III.   But, it is suggested that the very fact itself
that this land was conveyed to Lena the daughter-in-
law, rather than to John the son, had the effect to
create a trust in favor of John's creditors, *if Hiram
knew at the time he conveyed to Lena that John had a
judgment outstanding against him.*   There is no doubt
(for he frankly admits it) that Hiram
*Knowledge of Debt.* knew when he made the conveyance to Lena
that John had this identical judgment "hang-
ing over him," and that he knew and fully appreciated
the fact that if he gave the land to John instead of
giving it to Lena, it would be taken *instanter* to pay this
identical debt.   But would the possession of this
knowledge on the part of the donor create a trust in
the gift in favor of the creditors?   Clearly not. Hiram
owed neither debt nor duty to John's creditors.   In-
deed, the land was his till he gave it to Lena, and he
was under no obligations to give it either to John or
to Lena.   If he saw fit, as he did, to give it to Lena
and thus to provide a home for his daughter-in-law and
her family, the creditors of John are not in a position

to object or complain upon any legal or equitable basis.

This proposition seems so clear as to render either authority or exposition unnecessary. The Supreme Court of Nebraska had before it this identical question, however, in the case of Wells v. Kindler, 147 N. W. 687. In this case the court said:

"Numerous authorities are cited on the question of transactions between relatives, and that where a deed is made by third parties to the wife of a judgment debtor the law will presume that the consideration was paid by the husband, and that the burden rests upon the wife to prove the bona-fides of the transaction; that is, that the consideration was paid by her, or by some person other than her husband. There is no doubt about the soundness of the rule contended for as a general rule, and the authorities cited cannot be questioned; but this rule, like all other general rules, has its exception. That a father may make a gift of his land to his children cannot be doubted; and if, when he desires to distribute a part of his estate among his children, he knows that one of his sons is in debt, and that if he gives the land to him it can be taken by his creditors, he has an undoubted right to convey the land to the son's wife, thereby securing to the family of his son the fruits of his patrimony."

IV. The third ground urged upon our attention as a reason for overturning the judgment of the learned chancellor who tried this case is that the forty-acre tract was, if we may so mix our metaphors as to thus express the idea, only "the nest-egg from which was hatched" and grew the 159 acres of land here in dispute, and that such and all growth and increment are due to the labor and management of John in dealing with and handling the land given by his father to Lena. There are two answers to this contention, one of fact and one of law. The answer which the facts make is that the purchase-price of this

159 acres is made up (1) of a mortgage for $3800 now on this land, (2) of the value of the original forty-acre tract of land given by Hiram to Lena, and (3) of the $1000 profit in the sale of the Anna Kenley land, which Lena bought and sold at a profit, which profit went into the land in dispute. Whether there is any equity remaining after these three items are deducted from the present value of the 159 acres, we do not know; because neither the value of the forty-acre tract, nor the value of the 159-acre tract in controversy, is shown by the record. When these relative values are known, there may prove to be a loss from the labor and dealing and management of John, and not an increment or gain therefrom. In fact, John swears that there is such a loss.

The answer which the law gives to the condition presented by the facts is, however, equally decisive against the contentions of the plaintiff. Dealing with a similar situation in the case of Gruner v. Sholtz, 154 Mo. l. c. 424, Gantt, J., said:

"If then, as we hold it was, the property was her's, could she employ or accept her husband's services in running a business, to which he had been trained, and could he lawfully give her his services to aid her in supporting her family?

"It would seem that in this jurisdiction the question is settled that he could.

"In Wait on Fraudulent Conveyances and Creditors' Bills (3 Ed.), sec. 303, it is said: 'It is settled beyond controversy that a husband may manage the separate property of his wife without necessarily subjecting it, or the profits arising from his management, to the claims of his creditors. The wife being vested with the right to hold and acquire property free from the control of her husband, the legitimate inference seems to result that she can employ whomsoever she desires as an agent to manage it. To deny her the right to select her husband for that purpose would constitute a very inequitable limitation upon her right

of ownership, compelling her to resort to strangers for advice and assistance, and would perhaps seriously mar the harmony of the marriage relation. In Tresch v. Wirtz, 34 N. J. Eq. 129, the vice-chancellor said: "A man's creditors cannot compel him to work for them. A debtor is not the slave of his creditors. The marital relation does not disqualify a husband from becoming the agent of his wife. All the property of a married woman is now her separate estate; she holds it as a *femme sole*, and has a right to embark it in business. She may lawfully engage in any kind of trade or barter. If she engages in business, and actually furnishes the capital, so that the business is in fact and truth hers, she has a right to ask the aid of her husband, and he may give her his labor and skill without rendering her property liable to seizure for his debts." '

"In the same work, Section 304, the following language is used: 'And where the wife was the owner of a farm upon which she resided, and which the husband carried on in her name, without any agreement as to compensation, it was held that neither the products of the farm, nor property taken in exchange therefor, could be attached by creditors of the husband.' [Gage v. Dauchy, 34 N. Y. 293.]

"In Seay v. Hesse, 123 Mo. l. c. 457, this court said: 'In Webster v. Hildreth, 33 Vt. 457, it is said: "Equity has no jurisdiction . . . to compel men to work for their creditors who may perversely prefer to work for their wives and children and leave honest debts unpaid." ' "

V. Lastly, it is contended that a presumption is to be entertained unfavorable to Lena Kenley, for that, being charged with fraud, she, though personally present in court, failed to testify. We need not go into this point extensively. The presumption **Failure To Testify.** urged exists in a proper case. [Schooler v. Schooler, 258 Mo. 83; Stephenson v. Kilpatrick, 166 Mo. 262; Leeper v. Bates, 85 Mo. l. c.

228.] But the record before us shows that the plaintiff took the deposition of Lena Kenley and offered it, together with her cross-examination, upon the trial. This deposition covers some sixteen pages of the printed record. In it she answered many questions which were wholly incompetent and which she ought not to have been compelled to answer, which however went in without objection at the trial. The rule relied on can have no application in a case wherein the adverse party sees fit to offer the deposition of a party charged with fraud. Certainly, this is so in a case wherein, as here, the witness in her deposition fully purged herself of fraud. Plaintiff in such a case ought not to have the benefit both of the testimony of the party and of the presumption arising from the failure of the party to testify.

While conceding that no special effort has been made by defendant John Kenley to pay the judgment against him, and while in nowise apologizing for a situation with the moral phases of which we are not here concerned, we are yet constrained to rule that the learned chancellor who tried this case reached the only possible conclusion, the present status of the law regarded. It follows that the judgment ought to be affirmed. Let it be so ordered.

All concur.