MRS. R. A. STIERLIN, MRS. WILLIAM R. HOLDEN, HERBERT C. STRAUBE and MRS. JOHN BOLEN v. JULIUS G. TESCHEMACHER ET AL., C. F. BEEHLER and JULIUS G. TESCHEMACHER, Appellants.—64 S. W. (2d) 647.

Division Two, October 28, 1933.*

*Wurdeman, Stevens & Hoester* for appellants.

*NOTE: Opinion filed at May Term, 1933, September 4, 1933: motion for rehearing filed; motion overruled at September Term, October 28, 1933.

*Anderson & Whittington* and *McAtee & Foley* for respondents.

ELLISON, P. J.—In May, 1919, one William A. Mosberger, since deceased, conveyed certain real estate in St. Louis County to the appellant Julius G. Teschemacher by his sole warranty deed for a recited consideration of $2500. Thereafter, in December, 1919, the said Teschemacher, to secure the payment of an alleged promissory note for $2,000, executed a deed of trust on the property to the defendant Richard Hord as trustee for the appellant C. F. Beehler. This suit in equity, brought by four of the heirs of the deceased grantor, Mosberger, complains that both of said transactions were fraudulent, and seeks: (1) to cancel said deed of trust; (2) to have the appellant grantee, Julius G. Teschemacher, declared a trustee *ex maleficio,* and to establish a trust in the land in favor of all the heirs of Mosberger; (3) or to have said warranty deed set aside so that the land will pass to said heirs by descent, and for partition. The chancellor canceled both the deed and the deed of trust and Teschemacher, grantee in the warranty deed, and Beehler, beneficiary in the deed of trust, have appealed.

The foregoing introductory statement does not, however, give an accurate picture of the full scope of the petition, of the parties, or of the issues. It will be necessary to state further facts. The warranty deed assailed is recorded in Book 451, page 10, office of the Recorder of Deeds of St. Louis County; the deed of trust, in Book 469, page 24, said recorder's office. The real estate involved is described as follows:

"Lots numbered five (5) and seven (7) of block four (4) of the J. F. Meyer Subdivision in Midland Heights a subdivision of U. S.

Survey 912 and 1920, township forty-six (46) north, range six (6) east, according to plat thereof recorded in plat book three (3), page fifty-seven (57), of the St. Louis County Recorder's Office.''

After making the warranty deed on May 19, 1919, the grantor, William A. Mosberger died in 1923, leaving no lineal descendants, father, mother, brother, sister or their descendants. His only collateral heirs were uncles and aunts, they being brothers and sisters of his deceased mother, to-wit: the appellant Julius G. Teschemacher, the defendants Hugo M. Teschemacher and Minnie Loertcher, and Julia Straube. The aunt Julia Straube died in 1925 after instituting this suit and the cause was revived in the circuit court in the names of her four children, the present plaintiffs and respondents, who were, as will be seen, cousins of the deceased Mosberger. The petition impleads three defendants named Hesse, who are alleged to claim some interest in the land as heirs of Mosberger. The record recites they were grandsons of Julia Straube. The chancellor's decree found they had no interest in the title. Why they were not heirs of Mosberger as much as the four plaintiff *children* of Julia Straube the record does not disclose.

Mosberger had married the defendant Amy Mosberger in 1911. They lived together only five weeks. After the separation he went to live with his mother on the land here involved. She died in 1917, and, it seems, devised the land to him in her will. Prior to that, in November, 1916, Mosberger's wife had instituted a suit against him in the Circuit Court of the City of St. Louis for separate maintenance. In January, 1917, she obtained an allowance in that proceeding of $150 suit money and $50 per month maintenance *pendente lite*. Mosberger appealed from this order to the St. Louis Court of Appeals, where the judgment was affirmed in November, 1919, Mossberger v. Mossberger, 202 Mo. App. 271, 215 S. W. 760. During the pendency of this appeal on April 28, 1919, the circuit court allowed her $1400 and costs for maintenance and suit money awaiting the appeal, and awarded execution therefor. On May 14, 1919, Mosberger filed a motion in the circuit court to set aside the above $1400 allowance and to quash the execution. Five days thereafter on May 19, while this motion was pending and undetermined, Mosberger executed to his uncle Julius G. Teschemacher the warranty deed attacked in this case. Such is the background behind the making of the deed.

Mosberger's motion to set aside the $1400 judgment in the separate maintenance suit was sustained and the judgment set aside on May 26, 1919. This left that proceeding with the original order made in January, 1917, allowing $150 suit money and $50 per month maintenance *pendente lite*, still standing, and with unpaid installments accumulating. In October, 1920, Mosberger filed a divorce suit in the St. Louis County Circuit Court against his wife, Amy. He ob-

tained a default decree in February, 1921, based on service of process by publication.

Mosberger died. intestate on July 29, 1923. About two months before his death he transferred to his uncle, the appellant Julius G. Teschemacher, stocks and bonds of the face value of about $6000. The defendant Edward W. Terry, Public Administrator of St. Louis County was appointed administrator of Mosberger's estate in September, 1923. Three months later, in December, 1923, Mrs. Mosberger filed a suit in St. Louis County against the administrator, Terry, to set aside the aforesaid default divorce decree obtained against her by his intestate, the deceased Mosberger. The circuit court held the divorce valid and in November, 1927, the St. Louis Court of Appeals affirmed that decree dismissing her bill. [Bennett v. Terry, 299 S. W. 147.]

Early in February, 1924, the defendant administrator Terry instituted a proceeding in the Probate Court of St. Louis County against the appellant Teschemacher to discover assets of the estate of Mosberger. Several hearings were held in that proceeding during the month of February, in which the appellant Teschemacher admitted by oral testimony and answers to interrogatories, that the $6000 in securities transferred to him by Mosberger a month or so before the latter's death had been made over to him by Mosberger on the agreement that he (Teschemacher) was to reimburse himself therefrom for a $600 indebtedness due him from Mosberger, pay the income from the remainder to Mosberger for life and then divide the *corpus* between himself, his brother the defendant Henry Teschemacher, and his two sisters, the defendant Minnie Loertcher and Mrs. Straube. However, we do not find anywhere in this testimony that Teschemacher admitted the *land* here involved was deeded to him on the same terms. The probate proceeding was concerned only with personal property in the form of securities transferred to Teschemacher in about June, 1923, whereas the deed to the land was made four years before in May, 1919. In this probate proceeding to discover assets, $3465 was recovered from Teschemacher for the estate of Mosberger, on a date not shown by the record here.

While Amy Mosberger's suit to set aside the divorce decree was pending, and perhaps also before the termination of the proceeding instituted by the administrator Terry against Julius Teschemacher to discover assets, Amy Mosberger filed a demand in the Probate Court of St. Louis County against the estate of her deceased former husband, Mosberger, covering the suit money and past due installments of maintenance, with interest, allowed in her separate maintenance suit in 1917, on which she credited $600 recovered from the sureties on the appeal bond in that case. This demand was filed on or about April 5, 1924. It was heard on April 11, and allowed on April 21 for $2989.24. The administrator took an appeal to the

circuit court where Mrs. Mosberger had judgment against the estate on March 9, 1925, for $3138.64.

With matters in this shape Julia Straube instituted the present suit in equity on April 7, 1924. The case seems to have stood on the circuit court docket for five years before it was heard in September, 1929. In the meantime the last amended petition was filed by the present plaintiffs in July, 1928, after Mrs. Straube's death. With respect to the warranty deed executed by William A. Mosberger in May, 1919, this amended petition alleges (after formal allegations and reference to the separate maintenance suit of Amy Mosberger, pending when the deed was made) that no part of the consideration of $2500 recited in the deed was in fact paid by the grantee, the appellant Teschemacher, to Mosberger, "but that said conveyance was made for the purpose of exempting said real estate from the lien of any judgment obtained or to be obtained against said William Mosberger by defendant Amy Mosberger, and that it was agreed between said William A. Mosberger and said Julius G. Teschemacher, orally, that said Julius G. Teschemacher was to hold the same, in secret trust, for the said William A. Mosberger during his lifetime, and at and in the event of the death of said William A. Mosberger that he was to hold the same for the benefit of himself, *plaintiff*, and the said Hugo M. Teschemacher and Minnie Loertcher." The word "plaintiff" which we have italicized, evidently means Julia Straube, the original plaintiff.

Later there is a further allegation that "although the defendant Julius G. Teschemacher accepted and held the record title of William A. Mosberger in and to said land for the benefit of himself and brothers and sister, Mrs. Minnie Loertcher, and *plaintiff*, he has since the death of said William A. Mosberger excluded plaintiffs from participation in said property and is now claiming and holding the same as his sole and separate property wrongfully and fraudulently and in defiance of the rights of these plaintiffs and of the rights of defendant Hugo M. Teschemacher and Minnie Loertcher."

The attack on the deed of trust executed by Teschemacher about six months after the land was deeded to him is couched in the following language: "that to further protect said property from the judgment had or obtained by said Amy Mosberger, the defendant Julius G. Teschemacher caused to be placed thereon the deed of trust hereinbefore referred to as the one given to the defendant Richard Hord and the defendant C. F. Beehler to secure the payment of the principal note of $2000 (and interest coupons) therein referred to, and plaintiff states that, as a matter of fact, the said notes were without consideration and that the sum of $2000, or no part thereof, was paid by said defendant C. F. Beehler to the defendant Julius G. Teschemacher, but that said Beehler consented that his name

might be used to further the purpose of the combination between defendant Julius G. Teschemacher and William A. Mosberger.''

The petition then goes on to state that Mosberger filed a suit for divorce from the defendant Amy Mosberger and obtained a decree based on service by publication in February, 1921, and that after the death of Mosberger in 1923, the defendant Amy Mosberger brought a suit against the administrator, Terry, to set that decree aside (all as hereinbefore recited) which suit, the petition says, ''is still pending.'' This particular allegation we do not understand, as the amended petition in which it appears was filed in July, 1928, and Amy Mosberger's suit to set aside the divorce decree had been finally determined against her and her bill dismissed by the St. Louis Court of Appeals some eight months before that in November, 1927. Perhaps the allegation was copied from one of the former petitions in this cause stating the facts as they stood earlier in the history of the litigation, but that does not entirely explain the matter in view of what follows in the petition, as stated next below herein.

Continuing, the petition says the plaintiffs ''are not sufficiently advised of the merits of the claim of defendant Amy M. Mosberger to either affirm or deny, as a matter of law, the allegations made in the petition *in either suit now pending herein*, and state that said defendant is either entitled to a one-half interest in said property or nothing, and declare her and defendants Julius G. Teschemacher, Hugo M. Teschemacher and Minnie Loertcher are entitled either to an undivided one-fourth and one-eighth interest in and to said premises, and declares her belief in one or the other alternative.''

These allegations are well night unintelligible. The words we have italicized, ''in either suit now pending herein,'' are probably intended to refer to Amy Mosberger's two suits, the one being her separate maintenance action, which it seems would have abated as an ambulatory proceeding on the death of her husband, Mosberger, in 1923, and the other her suit against the administrator, Terry, to set aside Mosberger's divorce decree; but as we have seen, this suit had ended in the St. Louis Court of Appeals the previous fall. It will be remembered Amy Mosberger had also filed a demand in the probate court in April, 1924, but this demand had been allowed by that court and, on appeal, by the circuit court in March, 1925, which was over three years before the last amended petition was filed in this cause in July, 1928. So it is equally difficult to make the allegation refer to this probate proceeding.

The quoted paragraph further says Amy Mosberger ''is either entitled to a one-half interest in said property or nothing,'' and declares ''her and defendants Julius G. Teschemacher, Hugo M. Teschemacher and Minnie Loertcher are entitled either to an undivided one-fourth and one-eighth in and to said premises, and declares *her*

(?) belief in one or the other alternative." We take this allegation to mean that since William A. Mosberger died without lineal descendants Amy Mosberger if his widow is entitled to a half-interest in the real. estate he left (under Secs. 325 and 327, R. S. 1929); and that the other half goes in four shares of one-eighth each to (1) the plaintiff Straube heirs, (2) the appellant Julius G. Teschemacher, and (3) the defendants Hugo M. Teschemacher and (4) Minnie Loertcher: or else, if Mosberger's divorce decree against Amy Mosberger was valid and she was not his widow, she takes nothing and the four interests just mentioned get one-fourth each. This allegation is therefore framed on the theory that the deed to Teschemacher was not voidable as against Amy Mosberger in her capacity as a *creditor* of Mosberger's estate by virtue of the allowance of her probate demand.

The petition then charges that to permit the appellant Julius G. Teschemacher to hold and appropriate the real estate to his sole and separate use would "operate as a fraud upon the rights of plaintiffs and that they would be irreparably injured;" following which are quiet title allegations with reference to the three Hesse children, the deceased Julia Straube's grandchildren, their unknown consorts, heirs, devisees, etc. The petition concludes with a prayer that: (1) the appellant Julius G. Teschemacher be decreed a trustee *ex maleficio, or* that said warranty deed to him be set aside; (2) that the deed of trust to Hord and Beehler be canceled; (3) that the rights and titles of the defendant Amy Mosberger be adjudicated; (4) that the appellant Julius G. Teschemacher be declared a trustee for plaintiffs (the respondent Straube children) Hugo Teschemacher and Minnie Loertcher with respect to said real estate to the extent of a three-fourths part thereof; (5) that the interests of the other defendants be adjudicated; (6) that the real estate be partitioned by a sale thereof and a division of the proceeds between the parties entitled thereto, including Amy Mosberger if she be found to have any interest; (7) for allowance of attorney fees, costs and general relief.

The answer of the appellant Julius G. Teschemacher alleged he purchased the land involved from William A. Mosberger, deceased, in good faith and actually paid the $2500 consideration recited in the warranty deed; and that he actually borrowed from the appellant Beehler the sum of $2000 to secure the payment of which the deed of trust was given. This answer further alleges that by reason of the divorce decree obtained by William A. Mosberger in February, 1921, the defendant Amy Mosberger has no dower or other interes' in the land. The appellant Beehler filed a general denial.

The answer of the defendant Amy Mosberger filed in 1928 after the St. Louis Court of Appeals had, in November, 1927, dismissed her bill to set aside the divorce decree obtained against her by her

deceased husband William A. Mosberger in 1921, nevertheless alleges that she was his wife and became his widow when he died in 1923. The answer further sets up the allowance to her of suit and maintenance money in her separate maintenance proceeding instituted in 1917 and the judgment in her favor for $3138.64 rendered by the circuit court in 1925 on appeal from the probate court. It is further alleged she is entitled to a one-half interest in the real estate and that the same cannot be divided in kind. The answer then recites again more fully the details about the allowance to her of suit and maintenance money in the separate maintenance proceeding and says the unpaid installments thereof were accumulating when William A. Mosberger made the warranty deed attacked, in May, 1919. It charges the conveyance was made for the purpose of defrauding, hindering and delaying her in the collection of her said debt; that the grantee Teschemacher was a party to this fraud; and that he executed the deed of trust to the appellant Beehler in furtherance thereof and without consideration. It alleged the execution of the deed rendered Mosberger insolvent, and joins with the petition in praying partition, cancellation of the warranty deed and deed of trust, and for an accounting of rents and profits with all of which is united a prayer that Julius G. Teschemacher be held a trustee *ex maleficio*, and for general relief.

The defendant administrator, Edward W. Terry, filed a petition to intervene as a party defendant, on the ground that the estate of William A. Mosberger, deceased, was insolvent and could only pay twenty-five cents on the dollar; and that if the relief prayed in the petition and answer of Amy Mosberger should be granted, he would be officially bound to take charge of the real estate involved as an asset of the estate of Mosberger. This intervening petition was granted, but Terry as a defendant failed to file an answer.

The defendant Minnie Loertcher filed an answer admitting every allegation of the petition; disclaiming knowledge of the asserted rights and interests of the defendant Amy Mosberger and therefore denying the same; claiming a one-fourth interest in the land; and praying an adjudication of the interests of the parties, for an accounting of rents and profits, for a writ of possession and general relief. The defendants Hugo M. Teschemacher and the Hesse grandchildren filed no answers. The adverse litigants severally filed replies denying the facts affirmatively alleged in the foregoing answers.

We shall attempt to summarize the evidence very briefly. The plaintiffs had taken the deposition of the appellant Beehler about five months before the trial. It was introduced in evidence as an admission. Beehler, himself, was present at the trial but did not testify. In the deposition Mr. Beehler said he loaned the appellant Julius G. Teschemacher $2000 in currency on May 19, 1919 (the date of the warranty deed), out of a large amount of cash he was

carrying in a safety deposit box. Teschemacher gave him an un-secured personal note for that sum, due in a year. A little later that same morning Mosberger came to Beehler and requested the latter to go with him to the Cass Avenue Bank and indorse a check which the bank had refused to cash for him. Beehler accompanied Mosberger to the bank and indorsed the check. Mosberger received the proceeds in currency and took them away. The canceled check was produced. It was for $2500 dated May 19, 1919, payable to the order of William A. Mosberger and signed "J. G. Teschemacher." The cancellation stamp thereon showed it was paid "6/6/19/"

The personal note for $2000 Teschemacher had given Beehler earlier that morning ran until December, 1919, when Beehler says he asked Teschemacher for security. On December 2, 1919, Tesche-macher gave him the deed of trust assailed in the instant suit, dated that day, running five years, securing a new principal note with ten semi-annual interest coupon notes for $60 each. The interest coupon notes produced at the taking of the deposition all bore Beehler's in-dorsement without recourse. He said he put this on them as soon as he got them. He took the deed of trust without requiring a cer-tificate of title and without any accurate record knowledge that Teschemacher held the title. He had seen the land but had never been inside the house and did not know the acreage included. The deed of trust was not recorded until sometime after delivery. Mr. Beehler said Teschemacher had ceased paying interest on the note after litigation over the title started in 1924 and that up to the time of the trial in 1929 no part of the principal had been paid.

In behalf of the plaintiffs and the defendant Amy Mosberger it was further shown by one real estate broker that the real estate in-volved was reasonably worth about $5500 in May, 1919, when Mos-berger conveyed it to Julius Teschemacher for an expressed consider-ation of $2500. Also there was undisputed proof that Mosberger continued to live on the place until his death, that is, for four years after the purported sale; that Julia Straube kept house for him after his mother's death, and that the relations between the two were affectionate. In addition to this the assistant treasurer of the Cass Bank & Trust Company produced a sheet from the bank ledger show-ing Julius Teschemacher's checking account between March and July, 1919, and testified therefrom that on June 6, the day the $2500 check from Teschemacher to Mosberger was paid by the bank, the balance carried over from the day before was $979.89; that there was a deposit on June 6 of $2500 making a balance of $3479.89, and a check for the same amount, leaving the balance at $979.89, just as it had been the preceding day and stood for several days after June 6. In other words, $2500 was put in the bank and then drawn out—not $2500 withdrawn and then put back. The further facts were developed that the inventoried assets of the estate totaled only

about $4400—which included the $3465 recovered back from Julius Teschemacher in the proceeding to discover assets—whereas the allowed demands exceeded $5600, exclusive of interest. One of these was the demand of Amy Mosberger heretofore mentioned. Another, for about $2200 was in favor of the original plaintiff, Julia Straube, but there is no contention this indebtedness to Julia Straube existed when the warranty deed was made in 1919. The third demand was for funeral expenses.

The defendant Hugo Teschemacher testified for the appellants. He said the real estate was not worth over $3000 when the warranty deed was made in May, 1919; and that William Mosberger told him he had sold the property to Julius Teschemacher. Mathilda Stierlin, one of the plaintiff daughters of Mrs. Straube, admitted on cross-examination that Mosberger told her he wanted to sell the place and move into town.

In the decree below the chancellor found Mosberger transferred personal securities consisting of notes and bonds of the aggregate face value of $8100 and of the actual value of about $8000 to Julius Teschemacher "at or about the time" the warranty deed and deed of trust were executed, and as a part of the same transaction. We are unable to discover any evidence in the record supporting this finding. The amount of securities shown in evidence to have been transferred was $6000, not $8100, and this was four years after the deed and deed of trust were executed in 1919.

The decree further finds the act of Mosberger in withdrawing $2500 from the Cass Avenue Bank on Teschemacher's check was merely colorable, and that the money was not in fact used for the purchase of the land; that Mosberger continued to live on the same thereafter; that the testimony given by appellant Beehler in his deposition was indefinite and uncertain; that Teschemacher and Beehler, though present in court, failed to take the witness stand. For these and other recited reasons the chancellor found the conveyance of the land by Mosberger to Julius Teschemacher, and the deed of trust given by Teschemacher to Hord as trustee for Beehler, were without consideration; and that both were executed by the parties thereto for the fraudulent purpose of hindering, delaying and defrauding the creditors of Mosberger and "to forestall the claim of the wife of William A. Mosberger."

The decree then finds the estate of Mosberger is insolvent, and that if Mosberger were living "and had instituted a suit to set aside the deed aforesaid to defendant, Julius G. Teschemacher, he would have the right to do so, and to have the deed be set aside for that purpose." Reference is then made to the fact that Amy Mosberger, who was a creditor of Mosberger's when he made the deed, is a party to the suit asking that the deed be canceled and the land returned to the deceased.

The court then finds that since the warranty deed and deed of trust ought to be set aside as to the defendant Amy Mosberger in her capacity as a creditor, "it should be and is" done for all purposes and the land restored to the estate; and the court further finds the probate court should sell the land for the payment of debts of the estate. Following this is another finding that the land was conveyed by Mosberger to Julius G. Teschemacher in trust for the grantor during his life, and then for the grantee Julius, his brother Hugo and his sisters Minnie Loertcher and Julia Straube; that Julia Straube and her children, the plaintiffs, were in no wise parties to any fraud involved therein, and that to refuse cancellation of the deed and deed of trust would work great wrong and injury to them. The decree canceled the warranty deed and deed of trust outright, "restored" the land to the estate of Mosberger, deceased, and provided the probate court might cause it to be sold in due course of administration for the payment of debts. It was ordered that a copy of the decree be certified to the clerk of the probate court.

I. It is difficult to determine from the petition and decree *nisi* the exact theory on which this suit was brought, tried and decided. Appellants contended at the trial and contend here the plaintiffs are attempting to enforce the secret, parol, express trust alleged, in violation of Section 3104, Revised Statutes 1929. Other allegations of the petition appear to bottom the cause of action on the facts showing a trust agreement together with the further facts that the conveyance was made to the grantee, Julius Teschemacher, without consideration and for the fraudulent purpose of thwarting Mosberger's wife, Amy, in the collection of her debt. Counsel for plaintiff-respondents maintained in the lower court and assert here their effort was to establish an implied trust, resulting or constructive, in conformity with Section 3105, Revised Statutes 1929, but neither the petition nor proof shows that the confidence of those who claim the benefit of the trust was abused, that they paid any purchase money, or otherwise brought themselves within the doctrine invoked. [Ebert v. Myers, 320 Mo. 804, 9 S. W. (2d) 1066: Gates Hotel Co. v. C. R. H. Davis Realty Co., 331 Mo. 94, 52 S. W. (2d) 1011.] But the petition goes further. It also prays in the alternative that the deed be set aside altogether, which would make the plaintiff Straube children take as heirs on the date of the death of their collateral ancestor, Mosberger, and subject to the payment of any of his debts chargeable against his estate. The petition does not, however, concede Amy Mosberger was a creditor, but alleges she was entitled either to a one-half interest in the land (as election dower, or in lieu of dower) or nothing.

But whether the trust sought to be established was express or implied, or though the view be taken that the effort was to cancel the conveyance and restore the land to Mosberger's estate, the plain-

tiffs, as his heirs, have no standing in court. They cannot make the turpitude of their ancestor the foundation of a cause of action claimed by succession as his heirs. [LaRue v. LaRue, 317 Mo. 207, 214, 294 S. W. 723, 726.] The chancellor held if Mosberger were living he could have maintained a suit to cancel the deed and deed of trust, and that his heirs therefore can do the same. Such is not the law. Neither the fraudulent grantor, nor his administrator, nor his heirs, can either enforce or undo the corrupt transaction. [Bank of Willow Springs v. Lillibridge, 316 Mo. 968, 976, 293 S. W. 116, 118; Hayes v. Fry, 110 Mo. App. 20, 83 S. W. 772.] Equity will not aid one who comes into court with unclean hands. [Fogle v. Pindell, 248 Mo. 65, 154 S. W. 81.] In stating the applications of this rule it is said in 21 Corpus Juris, section 177, page 190: "The effect of the maxim is that a court of equity will leave the guilty party seeking its aid where it finds him. Not only does equity refuse to aid or enforce such a transaction, but where it has been in whole or in part carried out, equity refuses to undo it, on the application of a. guilty participant, and refuses to relieve him from legal liabilities or other consequences of his misconduct." The law allows deviations from the rule in exceptional cases, Snitzer v. Pokres, 324 Mo. 386, 400, 23 S. W. (2d) 155, 161, but there are no facts or equities in favor of the kinsmen of Mosberger claiming in this case merely as his *heirs*, which should exempt them from the application of the maxim.

■ II. Nevertheless, while this is true as to the plaintiff Straube children and the defendants Hugo Teschemacher, Minnie Loertcher and administrator Terry, it is not true of the defendant Amy Mosberger, who appears in the case as a preexisting judgment creditor of Mosberger though she has no standing as a doweress since it was conclusively determined by the St. Louis Court of Appeals in Bennett v. Terry, 299 S. W. 147, that Mosberger's divorce from her was valid. She filed an answer setting up her judgment claim and pleading the warranty deed and deed of trust were executed for the purpose of hindering, delaying and defrauding her in the collection thereof. Equity has undoubted power to give her relief. To what extent the court should go is the real question.

■ Section 3116, Revised Statutes 1929, provides, in substance, that every conveyance of goods and chattels in trust to the use of the person making the same shall be void as against creditors, existing and subsequent, and purchasers. It is held in Jamison v. Miss. Valley Trust Co. (Mo.), 207 S. W. 788, 789, that while this statute mentions only personal property, the principle announced applies to real estate as well. The defendants Amy Mosberger and Terry, administrator, invoke this statute and decision, claiming the evidence shows the deceased Mosberger executed the warranty deed assailed on a secret, parol trust of such character as the statute makes void against all creditors. In other words, they rely on the finding of

the chancellor that Mosberger and Julius Teschemacher secretly agreed the latter should hold the land in trust for the benefit of the former during his life.

We think this statute is not applicable to the case for two reasons. In the first place, we are unable to agree there was any substantial evidence that Mosberger executed the deed on such a trust. There is ample proof that he transferred his personal securities to Teschemacher under that kind of an agreement four years after the deed was made, but none that he made the deed on those terms—at least, none that does not rest on pure conjecture.

The other reason for rejecting Section 3116 as applying to this case is that the statute of its own force does not make the conveyance void as to the part of the title in litigation here. Mosberger has been dead for ten years. While the statute may have invalidated the conveyance to the extent that he, as grantor, attempted to reserve the benefit of the land to himself during his life, it does not, by its very terms, invalidate the remainder interests conveyed, which is the part now in dispute. [McFarland v. Bishop, 282 Mo. 534, 551, 222 S. W. 143, 147; Citizens Bank v. Hilkemeyer, 325 Mo. 849, 860, 29 S. W. (2d) 1090, 1095.]

█ The chief reliance of respondents, however, is placed on Section 3317, Revised Statutes 1929. This statute, as applied to the facts of this case, provides in substance that every conveyance of real estate made with the intent to hinder, delay or defraud creditors of their lawful debts and demands shall be utterly void as against such creditors, prior and subsequent. We think and hold there was abundant proof that Mosberger executed the warranty deed to Teschemacher to hinder, delay and defraud his wife, Amy Mosberger, in the collection of her separate maintenance judgment, and that the deed of trust was executed to defendants Hord and Beehler for the same purpose. While not agreeing the evidence shows everything the chancellor found on these issues there is enough to induce the conclusion that both conveyances were executed without consideration and for the wrongful purpose mentioned.

But while this is true as to the defendant Amy Mosberger with respect to her judgment claim, was the chancellor warranted in canceling the warranty deed entirely and restoring the land to the estate of Mosberger to be administered as an asset and sold through the probate court for the payment of debts, and to pass through the channels of descent and distribution if any surplus should remain? On this point the chancellor properly followed a decision of this court, St. Francis Mill Co. v. Sugg, 169 Mo. 130, 136, 69 S. W. 359, 360, which holds that where creditors assail a deed executed by a deceased debtor in his lifetime as having been made in fraud of creditors, after the deed is set aside at their suit the administrator

of the deceased debtor may treat the property thus uncovered as assets of the estate.

But we are constrained to hold this decision does not properly declare the law and should be overruled. It is well established that a transfer of property, fraudulent and void as to creditors, is nevertheless valid as against the grantor and his privies in estate. [Stevenson v. Edwards, 98 Mo. 622, 626, 12 S. W. 255, 256; Charles v. White, 214 Mo. 187, 202, 112 S. W. 545, 547.] It is stated in the Charles case, just cited, that no rule of law is more firmly established. The Stevenson case declares the familiar doctrine that such fraudulent conveyances are void only as to creditors, and then only to the extent necessary to pay the debts. "Satisfy the debt and the conveyance must stand."

The indebtedness to creditors may have been contracted either prior or subsequent to the execution of an alleged fraudulent conveyance. The general rule is that a subsequent creditor will not be heard to complain about what his debtor did with his property before the accrual of the indebtedness unless at the time of the conveyance the debtor harbored the fraudulent intent to become indebted and secret his property as against future creditors, and sometimes, where the conveyance reduces the debtor to insolvency or embarrassed circumstances. [Clapp v. Kenley, 277 Mo. 380, 387, 210 S. W. 10, 11; Lander v. Ziehr, 150 Mo. 403, 413, 51 S. W. 742, 744.] In May v. Gibler, 319 Mo. 672, 678, 4 S. W. (2d) 769, 771, this court said: "We have held in a long line of cases that proof of fraud as to existing creditors does not necessarily render a deed void as to subsequent creditors and that actual fraud as to them must be pleaded and proven."

Now there was no pretense in the instant case of pleading or proving an actual fraudulent intent on the part of Mosberger when he made the deed, as against subsequent creditors. At least there was no contention that he sought to defraud anybody except Amy Mosberger, an existing creditor. Nor did the execution of the deed reduce him to insolvency or anything approaching it. He still had personal securities which the decree says were of the face value of $8100 and actually worth $8000 when he transferred them to Teschemacher four years later in about June, 1923. (The securities listed in the record amount only to $6000.) We are unable to find any evidence justifying the conclusion that the conveyance of the land to Julius Teschemacher in May or June, 1923, was intended to hinder, delay or defraud subsequent creditors, and if there was no such intent these creditors cannot assail it.

Should it be the law that the successful suit of a single pre-existing creditor to set aside a fraudulent conveyance of land throws the land back into the estate of the deceased grantor to be administered by the probate court as other assets and sold for the payment

of debts, or the particular debt, when neither the administrator, the heirs nor subsequent creditors could maintain a suit for that purpose and neither the heirs, subsequent creditors of the deceased nor general creditors of the estate can share in the proceeds of the sale? We think not. The general rule is that a court of equity, having vacated a sale of property as in fraud of creditors, will proceed to do full and complete justice by ordering a sale of the property under its own direction. [27 C. J., sec. 813, p. 852.]

Indeed, while our statutes have vested in the probate courts power to order the sale of land belonging to a *decedent* for the payment of his debts, and to discharge judgment and other liens thereon in the order of their priority, Sections 148 to 156, Revised Statutes 1929, it may be doubted whether that court's jurisdiction properly would extend to the conduct of such sales where the deceased grantor has forfeited all title to the real estate by executing the fraudulent conveyance, and the real issue is between the creditor and the fraudulent grantee in a court of equity. As said in George v. Williamson, 26 Mo. 190, 193, the land constitutes no part of the fraudulent grantor's estate; and he, if living, would not be a necessary party to the equity suit. [Schneider v. Patton, 175 Mo. 684, 726, 75 S. W. 155, 167.] The general rule is that the creditor may sue alone for his own benefit, 27 Corpus Juris, section 626, page 749, and we can see no reason why the probate court should be permitted to intermeddle in the case, or why the administrator of the deceased grantor may "treat the property thus uncovered as assets of the estate," as the Sugg case, supra, 169 Mo. l. c. 136, 69 S. W. l. c. 360, puts it.

The decree *nisi* should be and is affirmed in part and reversed in part, and the cause is remanded with directions to the circuit court to enter its decree ascertaining the amount due the defendant-respondent Amy Mosberger (now Bennett) on her said judgment claim; that a reasonable time be fixed and allowed the appellant Julius G. Teschemacher to pay said amount, with interest and costs, into court for the benefit of the respondent Amy Mosberger, in event of which payment said land shall be free and clear of the lien of said claim; that said decree further make an order for the sale of said land free and clear of the lien of said deed of trust executed to the appellant C. F. Beehler, in default of such payment, the sale proceeds to be applied upon said judgment claim and the costs of this suit and any surplus proceeds to go to the appellant Julius G. Teschemacher. In her answer the defendant Amy Mosberger prayed for an accounting from the appellant Julius G. Teschemacher of the rents and profits of said land. The circuit court did not award her that relief. She has not appealed. Accordingly her recovery is limited as above provided herein. The costs should be taxed against the appellant Julius G. Teschemacher.

The cause is remanded for further proceedings not inconsistent herewith. *Tipton, J.,* concurs; *Leedy, J.,* not sitting.