247 S.W.2d 686 (1952)
LEHR
v.
MOLL et al.
No. 42606.
Supreme Court of Missouri, Division No. 2.
March 10, 1952.
Motion for Rehearing or to Transfer to Denied April 14, 1952.
*687 Thomas F. McDonald, George M. Hagee, and Raymond F. McNally, Jr., all of St. Louis, for Margaret Lehr Moll, Charles F. Lehr, Jr., and Richard F. Moll, Individually and as Executor of the Estate of Charles F. Lehr, Deceased, appellants.
Norman C. Parker, St. Louis, for Charlotte Lehr Young, appellant.
Robert L. Brown, Richard M. Stout, St. Louis, for respondent.
Motion for Rehearing or to Transfer to Court En Banc Denied April 14, 1952.
TIPTON, Judge.
In the circuit court of St. Louis County the respondent filed an action to set aside a deed of trust and promissory notes for $9000 secured thereby on certain real estate situated in that county. The trial court's decree found that the signature of respondent to the notes and the deed of trust had been procured by fraud and enjoined the enforcement by the appellants.
The evidence shows that the respondent married Charles F. Lehr, now deceased, on March 23, 1946. Both had been previously married. The respondent had a son by her first husband and the deceased had three children by his first wife, who are appellants.
On March 14, 1947 deceased executed a contract to purchase the real estate which is security for the deed of trust and notes in question. The sale was consummated on April 10, 1947 at the real estate office of Arthur A. Osterkamp. Those present included Mrs. Gross, the seller of the real estate, the deceased, the respondent, Arthur *688 A. Osterkamp and his wife. At the request of deceased, the deceased and respondent were made grantees in the deed. The evidence shows that the entire purchase price of $13,153.19 was paid by deceased.
Soon after the deed had been delivered to deceased and the seller had been paid, the deceased stated he wanted a "protection mortgage" placed upon the property.
In regard to the "protection mortgage" Arthur A. Osterkamp testified as follows:
"A. Well after we had closed the deal Mr. Lehr then stated he thought it would be a good thing to put a protection loan on there, merely a fake loan. He asked Mrs. Lehr if she thought it would be all right and she thought it would be okay and he asked me if I could draw up the papers. I said I could. I asked him whose name he wanted to use, who he wanted for trustee and how much loan and how much interest and so on and so forth. Mr. Lehr said as long as it was a fake loan it would be all right to use someone in our office, use some trustee and we had Mr. George R. Hunsche there so we used him. He said 5% interest and so we prepared the notes.
"Q. Who were the notes made payable to? A. Made to my wife Juanita Osterkamp.
"Q. Do you recognize her endorsement on the back? A. Yes, I do.
"Q. Did you see that endorsement fixed? A. Yes, I did.
"Q. When was it put on there? A. After the deal was closed and we drew up the papers, Mr. and Mrs. Lehr signed them and then Mr. and Mrs. Lehr came to Clayton with me and we recorded those papers and after we recorded them we left the deed here and took the notes back and Mrs. Osterkamp endorsed them and turned them over to Mr. Lehr and that's the last I seen of them.
"Q. Until today? A. Yes, sir."
Respondent testified that deceased told her that the mortgage was for protection in case "we had some accident or liability against our house nobody could take our house. I was very unfamiliar with those proceedings." She further testified that she trusted the deceased.
The respondent and deceased were paid nothing for the notes and after they were endorsed by the payee, Mrs. Osterkamp, they were delivered to deceased. After deceased had received these notes he called upon his son-in-law, Richard F. Moll, an attorney in St. Louis. Moll testified that deceased told him that the deceased and respondent had agreed that whatever property he had would be inherited by his children, while her property would go to her son by a previous marriage. The deceased told Moll that he had placed a deed of trust on the home to secure the notes which he wished his children to own after his death. He also stated that the respondent insisted that title to the property be put in both their names and, to keep peace in the family, he had done so. Moll prepared a trust agreement whereby he agreed to hold the notes as trustee for deceased and to deliver them to his three children after his death. This trust agreement was signed by both deceased and Moll.
In April, 1950 Mr. Lehr died and approximately one week thereafter Moll delivered the notes to appellant Charlotte Lehr Young to hold as nominee of the deceased's three children.
Appellants contend that the decree of the trial court was erroneous, first, for the reason that "the land in question was purchased by the husband with his own funds and, even though title was taken by the entireties, the evidence establishes the husband's intention to create and the creation of a resulting trust therein for his benefit to the extent of the $9,000.00 deed of trust; therefore, the plaintiff neither acted to her detriment nor suffered injury."
Appellants contend that the evidence shows that deceased did not intend that he and his wife would own the property as tenants by the entirety unencumbered, but by his actions he only intended that they were to own the property as tenants by the entirety subject to the deed of trust securing the notes for $9000.
We agree with appellants that the law in this state is that where a husband *689 purchases real estate with his own funds and the grantees in the deed are the husband and wife, then they become tenants by the entireties, and it will be presumed that the husband intended the conveyance as a provision for his wife and a resulting trust will not arise. However, the presumption that the purchase was an intended settlement upon his wife is rebuttable. Bender v. Bender, 281 Mo. 473, 220 S.W. 929; State ex rel. Roll v. Ellison, 290 Mo. 28, 233 S.W. 1065; Thierry v. Thierry, 298 Mo. 25, 249 S.W. 946; Fulbright v. Phoenix Ins. Co., 329 Mo. 207, 44 S.W.2d 115; Hiatt v. Hiatt, Mo.Sup., 168 S.W.2d 1087.
Since the presumption that the purchase was an intended settlement on his wife is rebuttable, it becomes necessary to inquire under what circumstances the presumption may be rebutted.
"A resulting trust must arise, if at all, at the instant the deed is taken. Unless the transaction is such that the moment the title passes the trust results from the transaction itself, then no trust results. It cannot be created by subsequent occurrences. 1 Perry on Trusts, § 133; Barrett v. Foote, Mo.Sup., 187 S.W. [67] loc. cit. 69; Stevenson v. Haynes, 220 Mo. [199] loc. cit. 206, 119 S.W. 346; Kelly v. Johnson, 28 Mo. loc. cit. 249; Richardson v. Champion, 143 Mo. [538] loc. cit. 544, 45 S.W. 280." Bender v. Bender, supra, 220 S.W. loc. cit. 930.
The facts in the case at bar show that the deed had been delivered and the seller had been paid and, in fact, had left Osterkamp's office before the deceased even mentioned the mortgage; therefore, the facts relied upon by appellants to create a resulting trust had not taken place "at the instant the deed was taken." It was subsequent events that appellants rely upon to create the resulting trust. Moreover, under the terms of the trust agreement signed by Moll and deceased, these notes were not to be delivered until after Lehr's death, which did not happen until about three years later.
The facts in this case come within the rule announced in the case of Fulbright v. Phoenix Insurance Co., supra, 44 S.W. 2d loc. cit. 118, wherein we said: "But in all the cases that have been called to our attention in which a resulting trust was declared in favor of the husband who had furnished the purchase money it was shown that he did not intend to vest any title or interest in the wife. No case has been cited nor have we found any in which such trust was held to arise where, as here, the husband furnished the purchase money and purposely caused the deed to be made to his wife or to himself and wife, intending thereby to convey an estate to her, but seeking to limit that estate and the scope and effect of the deed, contrary to its terms, by his mere intention that the deed should not have the full effect the law affixes to it."
So at the time the deed from Mrs. Gross was delivered to deceased there were no facts from which a resulting trust could be established.
On the question of fraud the appellants contend that the evidence "fails to show the essential elements (a) that any false representation was made to the plaintiff, or (b) that the plaintiff acted in reliance upon such a representation."
As previously shown by the testimony of Mr. and Mrs. Osterkamp and also the respondent, the deceased said he wanted "a protection deed of trust," which is explained to be a "fake deed of trust," to be used in case of an "accident or liability." Certainly, that was a false representation. Respondent testified that she signed the notes and mortgage because "he told me the mortgage was to protect us in case of an accident." She further testified that she trusted him and she signed it. Surely, this evidence is sufficient to show respondent relied upon deceased's representation. We will hereafter show that respondent was a competent witness.
Moreover, from the testimony of Mr. and Mrs. Osterkamp, we think the trial court was justified in concluding that deceased was saying in effect that the "fake mortgage" did not create a lien on the land; also, the court could infer from the fact that respondent signed the deed of trust *690 and notes she did so relying upon deceased's false representation.
Of course, the respondent was injured by signing the notes and deed of trust. The execution of them made her personally liable for their payment. We have just stated that the instant the deed was delivered an estate by the entirety was created, and its value would have been considerably less with a deed of trust securing $9000 in notes.
We hold that the evidence shows that deceased knowingly made false representations to respondent, that she relied upon these false representations and was injured thereby; therefore, we hold the trial court correctly found that the deed of trust and notes were procured by deceased through fraud, and for that reason the deed of trust and notes were void. See Judd v. Walker, 215 Mo. 312, 114 S.W. 979; Remmers v. Remmers, 217 Mo. 541, 117 S. W. 1117.
We are of the opinion the respondent was a competent witness. Appellants served upon the respondent interrogatories under our new Code of Civil Procedure, now RSMo 1949, § 510.020, V.A.M.S. We held in the case of State ex rel. Williams v. Buzard, 354 Mo. 719, 190 S.W.2d 907, loc. cit. 910, "that it was the intention of our Legislature in adopting the new Code to make the scope of examination on interrogatories under Section 85 coextensive with that permitted on depositions * *." We have held that when a party had taken his adversary's deposition in the same action, it amounted to a waiver of any incompetency of his adversary, notwithstanding he would have otherwise been incompetent. Ess v. Griffith, 139 Mo. 322, 40 S.W. 930; Rice v. Waddill, 168 Mo. 99, 67 S.W. 605. We therefore hold that by serving the interrogatories upon respondent, appellants waived her incompetency as a witness.
Appellants contend that a court of equity will not aid respondent because she did not come into court with clean hands. This contention is based upon the fact that respondent knew that the deed of trust and notes for $9000 were a "fake mortgage" to avoid any liability and, therefore, fraudulent. But it must be borne in mind that there was no debt due or prospective debt due any person by the grantors in this deed of trust; therefore, it was not a conveyance made with the intent to hinder, delay or defraud any creditor or subsequent creditor. The general rule is that a subsequent creditor will not be heard to complain of what his debtor did with his property before the indebtedness accrued. The only exception is that the debtor at the time he conveyed his property harbored a fraudulent intent to become indebted and to so smuggle and hide it as to prevent the collection of a special debt. Coleman v. Hagey, 252 Mo. 102, 158 S.W. 829; Clapp v. Kenley, 277 Mo. 380, 210 S.W. 10. A debtor, in disposing of his property, cannot commit a fraud upon a creditor unless the creditor had a legal right to look to such property for satisfaction of his claim. Maender v. Breck, Mo.App., 159 S.W.2d 310.
There were no creditors when the deed of trust was executed, nor were there any at the time of the trial in this cause. We think this assignment is without merit.
It follows that the judgment and decree of the trial court should be affirmed. It is so ordered.
All concur.