In Re ESTATE OF IRVIN F. PADGETT; IRVIN F. PADGETT, etc., Defendant in Error, v. SMITH, Plaintiff in Error.

St. Louis Court of Appeals, October 17, 1905.

1. GUARDIANS AND CURATORS: Removal: "Other Good Cause." Under the provisions of section 3498, Revised Statutes of 1899, empowering the probate court to remove a curator for certain causes mentioned or for "other good cause," together with the provisions of section 42, Revised Statutes of 1899, which is made to apply to curators by section 3534, waste or mismanagement of the estate of a ward is sufficient cause for removal of a curator.

In re Estate of Padgett.

2. ——: ——: **Wrongful Appropriation.** Where a curator without authority of court invested the funds of the ward in land, taking the deed in his own name, this was a devastavit and was sufficient ground for removal of the curator; the fact that the curator a year afterwards gave a deed of trust securing the amount to his ward did not better his position.

3. ——: ——: **Conflicting Interests.** If the curator asserts some claim to property claimed by his ward, adverse to that of the ward, he is "unsuitable" to execute the trust and may be removed under the provisions of section 42, Revised Statutes of 1899, which is made to apply to curators by section 3534.

4. ——: ——: **"Party Interested."** Where the curator appears and contests an application for removal and where the facts show that he is unsuitable because of mismanagement and claiming interests adverse to the ward, it is the duty of the court to remove him, and it does not matter whether the application is presented by a party interested or not.

Appeal from Scotland Circuit Court.—*Hon. Edwin R. McKee,* Judge.

Affirmed.

*E. R. Bartlett* and *Berkheimer & Dawson* for appellants.

*Smoot, Boyd & Smoot* and *Lewis Myers* for defendant in error.

When a husband invests money of the separate estate of his wife and the title is taken jointly it creates no entirety of estate in the survivor, where there is no issue of said marriage, and there is no written consent of the wife for said investment. He is a trustee for her and her heirs, and her heir is entitled to a proportionate part of the land so purchased by such an investment. Crawford v. Jones, 163 Mo. 577; Johnston v. Johnston, 173 Mo. 115; Winn v. Riley, 151 Mo. 66; McLeod v. Venable, 163 Mo. 536.

STATEMENT.

This proceeding originated in the probate court of Scotland county, having for its purpose the removal of plaintiff in error, who is curator of the estate of Irvin F. Padgett, an infant. The facts, as disclosed by the record, are that one Padgett died, leaving a wife and infant son, Irvin. The wife qualified as administrator of his estate. Afterwards, and before the estate was administered, she married Mr. Smith, plaintiff in error, and thereupon the said second husband was duly appointed and qualified as administrator *de bonis non* of the estate of her first husband and also curator of the estate of her minor son, Irvin. There came into the hands of the curator $1,400 of money belonging to said minor and Mrs. Smith had $1,275 in her own right which came to her by the election of a child's part in the estate of her deceased husband. It was decided that they would purchase a farm, whereupon the curator and his wife made the purchase of one hundred and sixty-five acres of land in Scotland county, for which they paid $4,125. Of this, the wife furnished $1,275, and her husband, the curator, without order of the probate court or other authority therefor, appropriated the $1,400 in his hands belonging to his ward and invested it in the purchase of said lands, the curator's father furnishing the remainder of the purchase price, which was $1,450. A deed was taken to the land in the name of the curator, James H. F. Smith and his wife, Sadie Smith. Mrs. Smith, the ward's mother, departed this life intestate soon thereafter, leaving said child Irvin as her sole and only heir. On her deathbed she committed the custody of her child to its grandparents, her father and mother. About a year after the curator had thus wrongfully appropriated the $1,400 of the ward's means and employed it in the purchase of said lands, he was informed that he had erred in so doing. Thereupon his father executed a deed of trust on certain lands owned by him, securing $1,400

in favor of his son as curator of the estate of Irvin F. Padgett. After the death of the mother of the ward, a controversy arose between Mr. Davis, the child's grandfather, and the curator, his son-in-law, as to the rights of the ward in the lands arising by virtue of the mother having furnished $1,275 of the purchase money, and the evidence tends to show that the curator claimed that the ward had no interest therein; that he, the curator, succeeded to the rights of his wife by right of survivorship, to the exclusion of her child, the ward. To settle this controversy, they called upon Judge Schofield at Memphis, Missouri, for advice on the subject. Judge Schofield, upon investigation, advised that the child, Irvin, would succeed to the rights of Mrs. Smith, whereupon, in Judge Schofield's office, the following conversation is said by the grandfather to have taken place between himself and the curator: " 'Jimmy, would you take that $1,275 from that orphan child that has no father, brother or sister to take care of him, only me, an old gray-headed man?' Says he, 'I will take every dollar that the law will give me.' Says I, 'That ends it.' " Thereafter, George W. Davis, the grandfather, having been appointed guardian of the person of the child, instituted suit in behalf of the ward in the circuit court of Scotland county, setting up the facts herein detailed and praying the said court to decree that the curator held so much of the lands purchased with the $1,400 of the ward's means and $1,275, the mother's means, as a trust for the benefit of the ward and that the same be partitioned. Said cause was transferred to the circuit court of Schuyler county by change of venue on the application of the defendant curator. The cause coming up in that court, George W. Davis having failed to qualify as guardian by making the bond required, the circuit court of Schuyler county appointed John C. Mills as guardian for the plaintiff therein and fixed his bond at $5,000, which was duly given and which was approved by the court. Upon a hearing of the case, the circuit

court of Schuyler county found the issue for the plaintiff and by its decree, divested the title of a pro-rata portion of said lands out of the curator and invested same into the ward and rendered judgment against the curator for certain rents and profits and costs of suit and appointed three commissioners, residents of Scotland county, to view and partition the lands. This decree was appealed from and the case is now pending in the Supreme Court. The record shows the curator contested this litigation.

The suit which afterwards went to Schuyler county, was instituted September 4, 1902, and while it was pending, on November 19, 1903, George W. Davis, the grandfather, acting as next of kin to the ward, instituted this proceeding in the probate court of Scotland county to remove the curator, in which it is alleged that "as said curator, he has charge of considerable estate belonging to said minor, consisting of money and lands; that his interests as such curator are directly in conflict with the interest of said ward, Irvin F. Padgett, and that $1,275 of the money belonging to the mother of said Padgett was invested by said Smith in the name of himself and wife and now said Smith is claiming to own the whole of said $1,275 as his own individual property; that he is mismanaging said estate in this: he has invested $1,400 of the ward's estate in lands in his own name without any order of the court or authority of law; that on account of this conflict of interest and investment aforesaid and general mismanagement of said estate, he is an unsuitable person to execute the trust reposed in him; that this affiant is interested in said estate; he is the grandfather of said Irvin F. Padgett; said Padgett's father and mother are both dead, and in the event of the death of said Padgett, he would be one of the heirs; that said Padgett has no brothers or sisters and no direct descendants except this affiant and his wife, wherefore he prays that said curator be removed

from said trust and that a suitable and competent person be appointed to execute the same."

The complaint was properly signed and verified. A hearing was had thereon in the probate court, to which the curator appeared and defended. The probate court found the issues against the curator and ordered his removal. The curator appealed to the circuit court where, upon a trial anew, the judgment of the probate court was affirmed and it was ordered that the curator be removed, whereupon he sued out this writ of error and presents the case here for review.

No declarations of law were asked or given in the circuit court.

NORTONI, J. (after stating the facts).—1. The principal contention of plaintiff in error is that the circuit court of Schuyler county had no jurisdiction to proceed in the case wherein John C. Mills was appointed guardian, which was prosecuted to judgment against the curator in that court. With that question we are not concerned in this collateral proceeding. That case is not before this court for review. Under the state of the record before us, we are concerned only with the question of whether or not there was substantial evidence to support the finding and judgment of the trial court in removing the curator under the law as is provided for the conduct of like causes.

2. In speaking of guardians and curators, our statute, section 3498, R. S. 1899, provides among other things, that "the court or judge in vacation shall have power to order them to give supplemental security or a new bond, with sufficient security, upon like notice, for the same causes, in the same manner and with like effect as is authorized by law in the case of administrators, and in default thereof *or for other good cause, to remove them, and appoint or admit the choice of others in their stead.*" There is no question in this case concerning the curator's bonds. The allegation of the com-

plaint is leveled at mismanagement. Under the statute quoted, the probate court is clothed with power to remove a guardian or curator not only for failure to furnish the supplementary security when required, but as well *"for other good causes."* The question thus arises as to what is good cause for removal or what do these general words signify employed as they are in this general grant of power to the probate court? We must hold that the words were employed by the Legislature in this connection with the full knowledge and understanding of the settled law on the subject. It has long since been determined and it is treated as elementary law that the courts, having power to appoint guardians and curators, have likewise, in their supervisory capacity, power to remove them from their trust for gross and confirmed habits of intoxication, any breach of official duties amounting to misconduct, failure to file inventories or accounts as required by the terms of his trust, using the ward's funds for the guardian's own advantage to the ward's detriment, abandonment of trust, ignorance or imprudence on the part of the guardian whereby the ward's interest suffer, waste of the ward's estate, and the like. [Schouler's Domestic Relations (5 Ed.), sec. 316; King v. King, 73 Mo. App. 78.] We must understand, then, that the existence of any one of these well-settled adjudicated causes for removal of a guardian or curator would be good cause within the contemplation of our statute on the subject.

Section 3534, R. S. 1899, provides, among other things, that "any guardian or curator may resign his trust or be removed from office for like causes and in like manner and with like effect as in the case of an executor or administrator." Thus we are referred to the administration law for additional light on the subject.

The administration law, section 42, R. S. 1899, provides:

"If any executor or administrator become of un-

sound mind, or be convicted of any felony or other infamous crime, or has absented himself from the state for the space of four months, or become an habitual drunkard, or in anywise incapable or unsuitable to execute the trust imposed in him, or fail to discharge his official duties, or waste or mismanage the estate, or act so as to endanger any coexecutor or coadministrator, the court, upon complaint in writing made by any person interested, supported by affidavit and ten days' notice given to the person complained of, shall hear the complaint, and if it finds it just shall revoke the letters granted."

By this section, waste or mismanagement of the estate are made sufficient cause for removal of guardians or curators as well as of administrators or executors. The complaint in this case charges mismanagement of the estate in terms and specifies the wrongful appropriation of $1,400 of the ward's funds without authority of the court in that behalf as an instance of such mismanagement, and indeed, the evidence in support thereof is not only substantial but is abundant to sustain the finding of the court thereon. It has been judicially determined by our Supreme Court that for a curator to thus appropriate his ward's means to the purchase of lands without the sanction of the probate court, is a *devastavit.* [West v. West, Admr., 75 Mo. 204; Steel v. Holladay, 20 Ore. 70; 3 Williams on Executors (7 Amer. Ed.), 321, 322.] This is the settled and determined law on the subject throughout those jurisdictions where the common law obtains, and should be so, else trust funds in such cases would ever be insecure and the substance of the helpless would be mismanaged and wasted not only to the detriment of the ward, but to the utter chagrin and humiliation of civilized society which has sought to provide a manner for their safe-keeping and protection. The American & English Ency. of Law, vol. 15 (2 Ed.), at page 80, states the law to be: "Any mingling by the curator of the ward's funds with his

own by which their identity is lost, or any use of such funds for his own benefit, is a conversion." [See also 3 Williams on Executors (7 Amer. Ed.), 321-322; Schouler's Domestic Relations (5 Ed.), sec. 316; 9 Amer. & Eng. Ency. Law (2 Ed.), 416.]

The evidence in this case shows conclusively that the curator wrongfully appropriated $1,400 of the ward's funds to the purchase of the lands mentioned without any authority whatever from the probate court in that behalf. This, of itself, was a conversion amounting to a *devastavit*, and afforded sufficient grounds for his removal from the trust theretofore reposed in him, and upon such showing, the court would indeed have been derelict in its duty had it not made such order of removal. The fact that the executor, a year afterwards, placed a deed of trust for $1,400 among the assets to make this good, cannot help the matter in this proceeding. The law will not permit men occupying positions of sacred trust to thus play fast and loose with the assets of the estate.

3. It is further shown that the curator was contending that he owned the interest in the land purchased, by the investment of $1,275 of the means of Mrs. Smith, his deceased wife, the ward's mother. He was thus asserting a claim adverse to the interest of the ward whose interest it was his duty to protect, and this matter was then involved in litigation, pending in Schuyler county. It is not our province to pass upon the merits or demerits of the claim as that case is not before us and we express no opinion thereon, but it is patent from the record here that there is a conflict of interest between the ward and the curator therein and for this reason the curator should be removed, if for no other. Section 42 of the administration law, supra, which, by section 3534, supra, is made to apply to curators as well as executors and administrators, provides that "if any executor or administrator become . . . in anywise incapable or unsuitable to execute the trust reposed in him," he

may be removed, etc. The Court of Appeals of Kentucky, in a case almost on all fours with this phase of the case at bar, said: "It is directly charged that he was asserting a claim as survivor of his deceased wife to rights belonging to and claimed by his ward as part of her deceased father's estate, and this is not denied." In declaring the law on these facts, the court said: "When he assumed the attitude and asserted a claim hostile to the interests of the ward, the fact that he was a stranger in blood tended to fortify the ·conclusion that he had become evidently unsuited for a faithful discharge of his duties as guardian, and unfit for the position." [Winsor v. Macatee, 2 Metc. (Ky.) 430.] That the same person should not be permitted to act in a fiduciary capacity under the jurisdiction of the probate court and represent interests which are hostile to each other, seems to be well settled by our Supreme Court in State to use Miller v. Bidlingmaier, 26 Mo. 483, and Clark et al. v. Crosswhite, 28 Mo. App. 34.

4. It is contended that the grandfather, the next of kin, standing *in loco parentis* to the ward and in the event of the ward's prior death, his heir, was not a "party interested" within the purview of section 42, R. S. 1899, and therefore cannot maintain this proceeding. It is not necessary to pass upon the question as to who is a party interested within the purview of that statute in the state of the record before us, inasmuch as the curator appeared in the probate court and, upon a decision against him, appealed therefrom to the circuit court and contested the merits of the complaint, whereupon the facts appearing as disclosed by the record, it was the duty of the court to remove him from his trust on its own motion whether the grandfather was an interested party or not.

The judgment was clearly right and should be affirmed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.