In re MOFFETT BROTHERS PARTNERSHIP ESTATE, Styled on Abstract and Briefs as COMMERCE TRUST COMPANY and B. C. HOWARD v. LOUISE McGREW MOFFETT, and LOUISE McGREW MOFFETT as Executrix of the Estate of THOMAS S. MOFFETT, Appellants.— 137 S. W. (2d) 507.

Division One, March 6, 1940.

*A. E. Watson* and *Martin J. O'Donnell* for appellants.

*Hugh M. Hiller* and *Wm. Bush* for Commerce Trust Company.

*Orlin A. Weede* and *B. C. Howard* for B. C. Howard.

BRADLEY, C.—September 10, 1936, B. C. Howard, an attorney, and hereinafter referred to as claimant, filed his petition in the Probate Court of Jackson County (at Kansas City) asking for an allowance against Moffett Brothers partnership estate for legal services alleged to have been rendered the estate. The Commerce Trust Company was the administrator *de bonis non* of the estate, or so considered for purposes of this opinion. The petition alleged that the administrator employed claimant, and that since employment he "has continuously given legal advice and rendered legal services to the administrator for which he had received to date of filing petition the sum of $1300." Claimant further alleged "that the action of said administrator in the payment of said sum of $1300 as aforesaid, should be approved, and that said administrator should be authorized and directed to pay to" claimant "on account of legal advice and services rendered such additional amount as the court may deem right and proper in the premises."

Louise McGrew Moffett, individually, and as executrix of the estate of Thomas S. Moffett, her deceased husband, who was a member of the Moffett Brothers partnership, resisted the allowance of any further fee to claimant and endeavored to prevent the approval of the payment of the $1300. The matter, by appeal, reached the circuit court and that court, on January 25, 1938, allowed claimant an additional fee of $11,500 and approved the payment of the $1300. Louise McGrew Moffett, in both of her capacities, appealed. We hereinafter refer to her as appellant.

The record covers nearly 1400 pages and the briefs cover nearly 700 pages, and many alleged grounds are urged by appellant to support the contention that the judgment should be reversed, but the conclusion we have reached makes it unnecessary to consider but one of these grounds, viz., that, under the facts, claimant is not entitled to any fee from the Moffett Brothers estate.

Moffett Brothers, a partnership, of Kansas City, Missouri, was composed of John and Thomas S. Moffett, brothers. For many years prior to August 23, 1927, the firm was engaged in farming and dealing in cattle in Missouri, Kansas, and Oklahoma. John Moffett died testate August 23, 1927, and at that time, according to claimant, the value of the partnership property was about $650,000. John Moffett, in his will executed February 21, 1921, named his brother, Thomas S., as executor, and provided that, in the event Thomas S. was unable to act, the Commerce Trust Company would be executor. Thomas

S. was appointed by the Probate Court of Jackson County as executor of the John Moffett estate on August 29, 1927, and also proceeded, as the sole surviving partner, to administer the partnership estate. August 17, 1928, Helen Moffett, John's widow, commenced proceedings in the probate court to remove Thomas S. as executor of the John Moffett estate on the ground that the interests of the John Moffett estate and the Moffett Brothers estate were conflicting. November 28, 1928, Thomas S. was removed as executor of the John Moffett estate, and the Commerce Trust Company (Kansas City) was appointed administrator *de bonis non* of the estate. December 22, 1928, the trust company, proceeding under Section 86, Revised Statutes 1929 (Mo. Stat. Ann., sec. 86, p. 52), claims to have become administrator of Moffett Brothers estate in Missouri. It is contended by appellant that the trust company was not legally authorized to administer the Moffett Brothers estate, but, as stated, we shall consider only one question.

August 15, 1929, Thomas S. Moffett filed suit in the District Court of Harper County, Kansas, to partition some 8000 acres of land, in Kansas, belonging to the Moffett Brothers estate. Mrs. Helen Moffett, widow of John, and one of the defendants in the Kansas partition suit, in her answer, alleged that the Moffett Brothers estate was indebted to the John Moffett estate, and asked that an accounting be had before there was any partition. Represented by claimant, the Commerce Trust Company, as executor *de bonis non* of the John Moffett estate in Missouri, on June 9, 1930, asked and was granted leave to intervene in the Kansas partition suit. The petition to intervene was verified by claimant, and alleged, among other things, that the Moffett Brothers estate *was indebted* to the John Moffett estate in the sum of $91,375.18, and that the Kansas lands belonging to the partnership estate of Moffett Brothers was "not subject to partition until all of the obligations of said partnership have been fully satisfied."

July 23, 1930, the Commerce Trust Company, as executor *de bonis non* of *the John Moffett* estate in Missouri, and represented by claimant, having been granted leave, filed an intervening petition in the Kansas partition suit, which petition was verified by claimant, and, among other things, alleged "that *there is now due* to intervenor as executor *de bonis non* of the will and estate of John Moffett, deceased, a sum of money, which your intervenor is unable to ascertain; *that there is a disagreement and irreconcilable differences between the surviving partner and the estate of John Moffett, deceased, as to the amount due to said estate,* which makes it necessary for this court to require an accounting between the plaintiff (Thomas S. Moffett) as surviving partner, this intervenor, as executor, and the defendants herein who are heirs of said John Moffett, deceased, and further states that due to the many years of existence of said partnership

and the complicated records that it will be impossible to adjust all of the differences and ascertain the rights and liabilities of all of the parties hereto in an action at law and that it will be necessary for a court of equity to take an accounting and determine the rights and liabilities of all of the parties hereto.'' (Italics ours.)

Thomas S. Moffett, plaintiff in the partition suit, resisted the accounting demands of Helen Moffett, and the Commerce Trust Company as executor of the John Moffett estate in Missouri, but was overruled by the trial court and appealed. The Supreme Court of Kansas sustained the ruling of the trial court, and held that there should be such ''an accounting as prayed for by the defendant (Helen Moffett) and intervenor in order to determine the respective interests of the parties in the land sought to be partitioned.'' [Moffett v. Moffett et al., 131 Kan. 582, 292 Pac. 947, l. c. 950.]

The opinion was handed down by the Supreme Court of Kansas on November 8, 1930, and Thomas S. Moffett, plaintiff in that case, died testate December 22, 1930, and his widow, appellant here, was the sole beneficiary under his will and was named in the will as executrix and was so appointed by the Probate Court of Jackson County. January 5, 1931, Mrs. Grace Torrance Clark, a sister of appellant, was appointed, by the Probate Court of Wyandotte County, Kansas, as ancillary administratrix of the Thomas S. Moffett estate in Kansas, and on January 8, 1931, Mrs. Clark, by order of the Probate Court of Wyandotte County, Kansas, became administratrix of Moffett Brothers estate in Kansas.

February 14, 1931, the partition suit, on motion of Helen Moffett, and resisted by appellant and Mrs. Clark, was revived in the names (as plaintiffs) of appellant, as sole beneficiary under the will of her husband, Thomas S. Moffett, and Mrs. Clark, as ancillary administratrix of the Thomas S. Moffett estate in Kansas. There was no order of revival in the name of Mrs. Clark as ancillary administratrix of the Moffett Brothers estate in Kansas, but Mrs. Clark testified that as claimant was ''prosecuting everything against the partnership'' she endeavored ''to protect the partnership.'' The partition suit, with its accounting feature, was tried in October, 1931. The Commerce Trust Company, in its dual capacity as executor *de bonis non* of the John Moffett estate in Missouri, and as administrator of the Moffett Brothers estate in Missouri, was represented by claimant. Mr. A. E. Watson, counsel for appellant in the present case, and counsel for her and Mrs. Clark in the partition-accounting suit, testified that *the principal contention* in the partition-accounting suit was whether or not Moffett Brothers estate was indebted to the John Moffett estate, and that appellant and Mrs. Clark, at the trial in Kansas, resisted this claim of indebtedness ''to the best of their ability, and Mr. Howard, representing the Commerce Trust Company in its capacities, never interposed any objection to anything that took

place in the trial of that case that would benefit the estate of John Moffett." And we might say that claimant does not contend that *the principal contention* in the partition-accounting suit was not as given by Mr. Watson.

The Kansas trial court, in the partition-accounting suit, found that the Moffett Brothers estate was indebted to the John Moffett estate in the sum of $143,829.96; that the Thomas S. Moffett estate was indebted to the Moffett Brothers estate in the sum of $27,399.25, and that the Moffett Brothers Cattle, Land & Lumber Company (an Oklahoma partnership in which John and Thomas S. were interested) was indebted to the Moffett Brothers estate in the sum of $101,228.06, and this finding was affirmed by the Supreme Court of Kansas. [Clark et al. v. Moffett et al., 136 Kan. 711, 18 Pac. (2d) 555.] The question as to whether or not the Moffett Brothers estate was indebted to the John Moffett estate was a complicated one, and a fair notion of this complication appears in the Kansas Supreme Court opinion in the partition-accounting suit, as follows (18 Pac. (2d) l. c, 556):

"Does the evidence sustain the finding that Moffett Brothers was indebted to John Moffett? On this point the evidence may be summarized as follows: John Moffett and Thomas S. Moffett resided at Kansas City, Mo. They were equal partners in the firm of Moffett Brothers. When this partnership was formed is not definitely shown, but it had existed a long time, perhaps thirty years or more, when it was dissolved by the death of John Moffett. It was engaged in the ranching and live stock business, and owned and operated a number of farms and ranches, and had offices in the Livestock Exchange Building at Kansas City. John Moffett spent most of his time at the office, where they had bookkeepers and other clerical help. Thomas S. Moffett spent most of his time looking after the farms and ranches and the livestock thereon, going back and forth from the office to the various ranches. Each of them had property owned individually. Both of them were members of the partnership firm of Moffett Brothers Cattle, Land & Lumber Company, which was engaged in the live stock, land, and lumber business in Oklahoma, the field work being looked after by the Oklahoma brothers, but the office business transacted at the Kansas City office. Both John and Thomas S. Moffett were members of a partnership known as Moffett Brothers & Andrews, which was also engaged in the live stock business. One or both of them were interested as members or otherwise in four other partnerships, namely, Andrews, Lewis & Moffett, Andrews & Lewis, J. C. Lewis & Co., and Andrews & Moffett. The books of all of these partnerships and of the personal business of John Moffett, and perhaps the personal business of Thomas S. Moffett, were kept in the one office at Kansas City and by the same office force. Collectively they transacted a large volume of business, amounting to many thousands of dollars each year. While notations or entries were made to identify

the business of each of the partnerships or individuals, it was all entered in a common ledger which bore the name of 'Moffett Brothers & Andrews Ledger.' About 1924 they had a firm of accountants examine these books and open a separate set of books for the partnership of Moffett Brothers. Separate books were also opened for the partnership of Moffett Brothers Cattle, Land & Lumber Company. Separate books were opened for some, perhaps all, of the other partnerships, but that is not material here. The business of the partnership of Moffett Brothers thereafter was kept in the books of that firm until the death of John Moffett, and thereafter to the time of the trial of this action. These books were in court at the trial, and the entries in them, the testimony concerning some of those entries, and a summary of them prepared by accountants, known in this record as 'Commerce Trust Company Exhibit No. 8.' "

Mr. Watson testified that after the trial court made its decision in the Kansas partition-accounting suit he, as counsel for appellant and Mrs. Clark, asked claimant to file a motion for a new trial on behalf of the Commerce Trust Company as administrator of the Moffett Brothers estate and that claimant refused to do so; that the reason he made such request was that he was fearful that, unless the Commerce Trust Company, as administrator of the John Moffett estate in Missouri appealed from the judgment, the merits might not be for consideration on appeal.

Appellant in her statement says that claimant "in one of his pleadings" in the partition-accounting suit, alleged that Mrs. Clark, as administratrix of Moffett Brothers estate in Kansas "was without power to make a defense on behalf of said partnership estate" in that suit. Claimant devotes forty pages of his brief to what is called an "analysis of appellants' statement of the case," and says that Mrs. Clark, as administratrix of the Moffett Brothers estate in Kansas, did appear for and represent said estate in the partition-accounting suit, and claimant goes on to say in this "analysis" that Mrs. Clark, as administratrix of Moffett Brothers partnership estate in Kansas "paid thousands of dollars of Moffett Brothers partnership estate money out to attorneys, Martin J. O'Donnell and A. E. Watson, for helping her in" the partition-accounting suit. Which means, as we read, that attorneys O'Donnell and Watson, and not claimant, resisted the claim of the John Moffett estate against the Moffett Brothers estate in the partition-accounting suit.

Appellant and Mrs. Clark sought review of the partition-accounting case, by certiorari, in the Supreme Court of the United States, and claimant and other counsel resisted, and the writ was denied. [Clark, Admx., et al. v. Moffett et al., 290 U. S. 642, 54 Sup. Ct. 61, 78 L. Ed. 558.]

Appellant brought suit in the United States District Court (Kansas) to enjoin the enforcement of the judgment against the Moffett

Brothers estate in the partition-accounting suit, but was unsuccessful. [Moffett v. Robbins, 14 Fed. Supp. 602, and 81 Fed. (2d) 431.] Notwithstanding that the purpose of the Federal court case was to enjoin the payment of a judgment against claimant's client, the Moffett Brothers estate, claimant said that he "was not directly interested in that case." And notwithstanding that *the principal contention* in the partition-accounting suit was on the claim of the John Moffett estate against the Moffett Brothers estate, claimant admits that he represented both estates in that suit. And it appears that claimant, at the trial of the partition-accounting suit, presented the evidence that resulted in a judgment, against one of his clients, for $143,829.96. The picture can be better appreciated by visioning John and Thomas S. Moffett as living and adversaries in a lawsuit on the same claim of indebtedness, as here, and claimant representing both of them. In a supplemental brief on behalf of the Commerce Trust Company, filed by attorneys, Hiller and Bush, it is stated that claimant "was allowed a fee (the $11,500, we infer), for acting as attorney for Commerce Trust Company, administrator of the Moffett Brothers copartnership estate in handling the complicated and difficult legal questions involved in procuring an accounting and adjustment of the partership affairs, so proper distribution could be made."

There can be no question on the conflicting interests of the John Moffett estate and the Moffett Brothers estate in the partition-accounting suit, and the rule that counsel cannot lawfully represent conflicting interests in the courts of the land is as old as our system of jurisprudence. "This court has ever recognized and enforced the rule that it is the duty of an attorney to devote his skill and diligence to the interest of his client and has refused to permit him to act for the adverse party in the same suit, even though his motives were honest." [National Hollow Brake Beam Company v. Bakewell et al., 224 Mo. 203, l. c. 226, 123 S. W. 561.]

In MacDonald v. Wagner, 5 Mo. App. 56, l. c. 58, the court said: "An attorney cannot recover for legal services rendered by him both to plaintiff and defendant in the same suit. The plaintiff here discloses a case founded upon a cause of action which the law, from wise motives of public policy, forbids. The intentions of plaintiff were doubtless good; but a lawyer can under no conceivable circumstances recover for services rendered in the same suit to parties having opposing interests."

"Justice and ethics both require that no attorney be permitted to receive fees from adversaries in any cause." [Logan v. Logan et al., 97 Ind. App. 209, 180 N. E. 32, l. c. 34.] And, as stated in Sun Bldg. & Loan Assn. v. Rashkes, 119 N. J. Eq. 443, 183 Atl. 274, l. c. 277, "an attorney cannot act on behalf of two opposing parties; and even though he may act for two parties in matters which are uncontested, his conduct is open to the most careful scrutiny. He is obliged to

exhibit the most perfect good faith. He cannot prejudice one client for the benefit of another. A scriptural passage which succinctly expresses the principle under consideration is found in Matt. VI, 24:33, as follows: 'No man can serve two masters; for either he will hate one, and love the other, or he will cling to one, and slight the other.' "

In Strong v. International Building, Loan & Investment Union et al., 183 Ill. 97, l. c. 101, 55 N. E. 675, is this: "Attorneys at law cannot thus accept employment from adverse litigants at the same time and in the same controversy. Nor does it matter that the intention and motives of the lawyers are honest, as we fully believe them to have been in the present instance. The rule is a rigid one, and designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests rather than to enforce to their full extent the rights of the interest which he should alone represent."

The record shows that claimant has received $6000 as counsel for the Commerce Trust Company as executor *de bonis non* of the John Moffett estate, and the inference is that the greater part of the $6000 fee from the John Moffett estate was for services in the partition-accounting suit and related matters.

As we have stated above, there can be no question as to the conflict of interest, in the partition-accounting suit, between the John Moffett estate and the Moffett Brothers estate, and the rule, as we have seen, is that an attorney cannot receive pay from both sides where the respective interests are conflicting. [See also Rochester et al. v. Gonterman et al. (Mo.), 49 S. W. (2d) 71; 7 C. J. S., sec. 167, p. 1024; 6 C. J., sec. 289, p. 722; 5 Am. Jur., sec. 64, p. 296; 2 R. C. L., secs. 51, 52, pp. 973, 974.]

Perhaps claimant rendered services for the Moffett Brothers estate of the value of $1300 when he was not representing conflicting interests. That is not made clear, hence in the situation, we do not think that we should disturb the approval of the payment of the $1300.

The judgment should be reversed and the cause remanded with directions to enter a judgment denying claimant any additional fee, but approving the payment of the $1300, and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by Bradley, C., is adopted as the opinion of the court. All the judges concur.