In re ESTATE of G. A. BUDER,
Deceased.

Baron & Freed et al., Respondents.

Oscar E. Buder, Appellant.

No. 46685.

Supreme Court of Missouri,
Division No. 1.

Nov. 10, 1958.

James J. Milligan, St. Louis, for appellant.

Charles B. Baron, David Baron, Baron & Freed, St. Louis, for respondents.

HOLLINGSWORTH, Judge.

This action originated in the Probate Court of the City of St. Louis, where, upon petition filed by G. A. Buder, Jr., Executor of the Estate of G. A. Buder, deceased, the law firm of Baron & Freed (composed of David Baron, Charles Baron, Raymond Freed and Morton Baron) was allowed the sum of $12,160 as attorneys' fees for services rendered the estate. Upon appeal to the Circuit Court by Oscar E. Buder, who has an unliquidated and unadjudicated claim against the estate, the cause was tried de novo to the court, resulting in a judgment sustaining the allowance, from which judgment Oscar E. Buder, hereinafter referred to as appellant, prosecutes an appeal to this court.

G. A. Buder and appellant were brothers and, from January 1, 1908, until January 1, 1946, were engaged as co-partners in the practice of law and extensive investment ventures under the firm name of Buder & Buder. That partnership was dissolved by appellant on December 31, 1945. On January 2, 1946, he instituted in the Circuit Court of the City of St. Louis an action against G. A. Buder (and the First National Bank of St. Louis, joined as the holder of certain securities allegedly the property of the partnership) for an accounting, in which he alleged numerous failures on the part of G. A. Buder to pay over and transfer to appellant his share of the profits and assets of the partnership.

G. A. Buder employed David Baron to represent him in that action in 1951. On June 6, 1952, a Second Amended Petition was filed. On October 14, 1952, David Baron, in behalf of G. A. Buder, filed answer and counterclaim to the second amended petition. On January 16, 1953, a referee was appointed to take and report the testimony. Extended hearings were held. G. A. Buder died testate on April 14, 1954. His son, G. A. Buder, Jr., a lawyer, was named in the will and thereafter was appointed and qualified as executor of the estate. The inventory of the estate, filed on April 29, 1954, showed assets of the value of $4,850,601. A "third settlement", filed in 1956, showed assets in the amount of $4,377,040. The accounting action was revived against G. A. Buder, Jr., as executor. It is still in progress and the attorneys' fees sought in the instant proceeding relate to legal services rendered the estate from December 20, 1955, to December 28, 1956.

On May 7, 1954, G. A. Buder, Jr., Executor, filed in the probate court a petition to employ and the probate court, on May 17, 1954, authorized him to employ Baron & Freed to represent the estate in said action. On interpleader filed by First National Bank, Pontiac Realty Company, a corporation, which had taken over the securities formerly held by the First National Bank, was substituted as a party defendant in lieu of the bank. The hearings before the referee on the issues presented by the second amended petition and the answers of the Executor and Pontiac Realty Company continued. It was said during the trial of the instant proceeding that they then exceeded 10,000 pages of transcript.

On November 1, 1954, a "supplemental petition to second amended petition" was filed. In that petition, Pontiac Realty Company, Arcadia Realty Company, Arc Realty Company, Arcadia Timber Company, and Lydiade Investment Company, corporations, and G. A. Buder, Jr., individually, were also named as defendants. The theory upon which they were made parties was that the five corporations were "straw" holders of assets constituting partnership property of Buder & Buder that had been wrongfully transferred to them by G. A. Buder and that G. A. Buder, Jr., was the president and chief officer of said corporations. (In 1955, on motion of G. A. Buder, Jr., Acreage Realty Company, a corporation, was made a party defendant. No

question is raised as to the propriety of that action and further mention of it need not be made.) The "supplemental" petition, on motion of defendants, was dismissed on September 5, 1956, without prejudice. It was never referred to the referee.

On October 15, 1956, a motion was filed asking leave to file a "third amended petition", naming as parties the aforesaid added defendants. The third amended petition, in much more detail than did the "supplemental" petition, alleges, in essence, that assets belonging to the partnership of Buder & Buder were placed by G. A. Buder in said corporations, of which G. A. Buder, Jr., is the chief executive officer, and that the profits and appreciations in value of said assets had pyramided into enormous sums, alleged to exceed $12,000,-000, which, in equity, belonged to the partnership. On February 15, 1957, the motion to file said third amended petition was sustained and summons ordered issued for the additional defendants.

Pontiac Realty Company, Arcadia Realty Company, Arc Realty Company, Arcadia Timber Company, Lydiade Investment Trust and G. A. Buder, Jr., in his individual capacity, will be sometimes referred to as the "added defendants", and the accounting suit will be referred to simply as Buder v. Buder".

In this court, appellant has presented two contentions:

(1) "Baron & Freed, attorneys, were employed to represent G. A. Buder, Jr., Executor of the Estate of G. A. Buder, deceased, and they cannot be paid out of the assets of the estate, on the Executor's petition, for representing the personal and corporate interests of G. A. Buder, Jr., on issues in the accounting suit which are antagonistic to and conflicting with the interests of the Estate of G. A. Buder."

(2) "The evidence introduced in behalf of Executor, G. A. Buder, Jr., of the Estate of G. A. Buder, deceased, failed to show any services rendered by Baron & Freed

in behalf of the said estate to the exclusion of other defendants, and this fact was not considered by the Circuit Court."

The petition for allowance of the fees in question was filed December 28, 1956. It alleges in detail legal services rendered G. A. Buder, Executor, by Baron & Freed in the case of Buder v. Buder, from December 20, 1955, to December 28, 1956, of the reasonable value of $12,160.

David Baron testified: He had practiced law since 1916 and had been employed in the case of Buder v. Buder for three years prior to the death of G. A. Buder. He personally participated in the calculation of time spent by his firm solely in the case of Buder v. Buder and the time alleged in the petition for fees was correct. Prior to seeking the allowance, he discussed with the executor the time spent and the value of the services rendered. The calculations made by them with reference to the value of the services of his firm from December 20, 1955, to December 28, 1956, were: 2 days of hearings at $300 per day; 3 days in Detroit preparing for and taking depositions pursuant to notice given by counsel for appellant at $300 per day; 533 hours of office work at $20 per hour; a total of $12,160. During all of the period from December 20, 1955, to December 28, 1956, all of the proceedings in the case of Buder v. Buder were at issue under the second amended petition, which contained 25 paragraphs and involved numerous issues. In cases of the nature of the litigation and the amount involved in Buder v. Buder, lawyers of St. Louis charge from $25 to $75 per hour, and the fees sought in the instant proceeding are reasonable. At the hearing in the probate court on the petition for allowance of fees, in answer to a question by the probate judge, counsel for appellant admitted the fees sought were reasonable. (Counsel for appellant volunteered the remark that he made no such statement.)

On cross-examination, David Baron testified: The depositions taken in Detroit at

the instance of appellant were taken under the pleadings set forth in the second amended petition. The "supplemental petition" had been filed, but the motion to dismiss it either was pending or it had been sustained when the depositions were taken. The original records of the 533 hours spent (in addition to the hearings and depositions) is shown by "time books" kept by each member of the firm. When witness Baron and his associate, Charles Baron, were in Detroit, they were there as counsel for the Executor and did not represent the parties who were afterwards made defendants. Motions to dismiss the supplemental petition were filed by Baron & Freed in behalf of the added defendants prior to December 20, 1955, but the petition for fees does not include any charge for that work. The motion for leave to file the third amended petition, which also included the added defendants, was filed on October 15, 1956. The petition, consisting of 59 paragraphs, sets forth extensive charges that the added defendants, as "straws", hold assets belonging to the former partnership of Buder & Buder, for which they and G. A. Buder, Jr., individually, should account. Acting in behalf of the Executor and Pontiac Realty Company, which priorly had been substituted as a party defendant in lieu of the First National Bank, Baron & Freed opposed its filing and filed numerous motions and memorandums in support of their position. However, on February 15, 1957, the motions to strike and dismiss the third amended petition were overruled.

(Thereafter, the added defendants, represented by Baron & Freed, as relators filed in this court an original proceeding seeking to prohibit the trial court from proceeding against them under said petition. On July 14, 1958, this court denied prohibition, stating "Our conclusion is that these matters [grounds asserted in behalf of the petition for the writ] cannot be determined on the pleadings in this case for prohibition." See State ex rel. Pontiac Realty Company v. Nangle, Mo., 315 S.W.2d 214, wherein the history of Buder v. Buder and the gist of the third amended petition are set forth in more detail than required for decision of the instant proceeding.)

During the cross-examination of Mr. Baron in the instant proceeding, his attention was directed to certain of the memorandums (briefs)· filed by him in ·opposition to the third amended petition, and he thereupon testified:

"Q. * * * Your memorandums were directed to keeping those additional defendants out of the case on the third amended petition, were they not? A. In behalf of the executor we felt it was to the interest of the estate to curb these proceedings.

"Q. As a matter of fact, * * * when you filed these memorandums, you were representing principally those defendants, those additional defendants as· this memorandum shows?

* · * * * *

"A. Here is the caption· memorandum. Memorandum of the defendant G. A. Buder, Executor of the Estate of G. A. Buder, deceased, and the Pontiac Realty Company, in reply to memorandum of Oscar E. Buder, plaintiff, relating to plaintiff's motion for leave to file his third amended petition and join additional parties defendant. It shows on its face whom I was representing and whom our firm was representing.

"Mr. Milligan: Q. Mr. Baron, * * * we are referring to the contents of those briefs; * * *. Now, as a matter of fact, are you saying now that you were not representing those five additional defendants in filing this brief? A. At that time I was not. I was representing G. A. Buder, Jr., Executor of the Estate of G. A. Buder, deceased, and the Pontiac Realty·Company. The Pontiac Realty Company had been made a party by interpleading of the First National Bank.

"Q. Then, as a matter of fact, Mr. Baron, you were representing as you say, the Executor, G. A. Buder, Jr., in an effort to prevent additional assets from coming into the estate of G. A. Buder, deceased, in this accounting procedure?

\* \* \* \* \*

"A. I was attempting to protect the estate and our accountants had advised us that your petition, with all of that new material in there, was an absurdity, was fictitious and therefore, it was the duty of the estate to try to curb this proceeding, which had cost it, in accounting fees alone, I daresay, over $50,000.00 and we had gone on for three years and this was something after the man died, after G. A. Buder died, two and a half years prior."

Mr. Baron was extensively cross-examined concerning the items shown on his "time books" and especially with reference to whether the work listed included any work in behalf of the added defendants. Typical of his answers are:

"Mr. Milligan, we have excluded any charge for any time that might have, at any time, been rendered on behalf of these other companies in this litigation and this is purely the services rendered to the Executor that we have listed here, in giving full time. So, my answer goes to that. I make that statement so you understand.

\* \* \* \* \*

"Q. Mr. Baron, during all the time, from December 20, 1955, until September, 1956, or whenever that supplemental petition was dismissed, you were actually representing all of the defendants then in the lawsuit which included the Pontiac Realty Company, the Arcadia Realty Company, the Arc Realty Company, Lydiade Investment Trust, and G. A. Buder, Jr. Isn't that correct? A. I represented them with reference to that supplemental petition, the pleadings to that supplemental petition.

"Q. And during all of that time there were motions pending to that supplemental petition? A. Yes, motions to dismiss.

\* \* \* \* \*

"Q. Can you, Mr. Baron, distinguish, in the hours you have got on this memorandum that you spent between December 20, 1955, up to the time the supplemental petition was dismissed? Can you specify the number of hours that you spent in behalf of each of the defendants that you were representing? A. Mr. Milligan, I have tried to make it plain and if I haven't I hope to make it plain this time; that we tried to exclude, whenever we possibly could trace any services rendered to any of the other companies. With reference to their supplemental petition excluded from the time that we listed in this statement of the services rendered."

Mr. Baron further testified that subsequent to the date on which appellant's motion for leave to file the third amended petition was filed (October 15, 1956) he did not apportion the time charged against the executor in the application for fees among the added defendants, although he had represented the added defendants since October 15, 1956.

"I don't intend to do it with reference to the major portion of that, for this reason: That in analyzing the petition, the third amended petition, I had to do the work for the executor because he is party defendant to all suits and there were thousands of shares of Burroughs stock—I think something like 60,000—inventoried in his estate and furthermore, the facts showed that other defendants had really no substantial rights at stake, because all of that stock had been given

to them by G. A. Buder, I think about 1924, that he had purchased and paid for with his own funds. They had nothing involved. The accountants have so advised us and we **have** checked the records ourselves, his own checks, and found he had paid for them and therefore the others didn't have very much at stake at all.

"The Court: But you were representing all five of the defendants after October 15, 1956? A. That is true."

Appellant offered no oral testimony but did introduce into evidence copies of certain court records, minutes, memorandums (to which we have herein referred), and an unverified listing of shares of Burroughs Adding Machine stock, and stock splits and dividends paid.

In addition to the contention that there is no merit to appellant's claim that a conflict of interest is shown to exist between the executor and the added defendants, Baron & Freed also assert: (1) that appellant "has no standing to question the allowance of attorneys' fees to [them]", citing Section 472.010, 1957 Cum.Supp. RSMo 1949, V.A.M.S., and In re Carlin's Estate, 226 Mo.App. 622, 47 S.W.2d 213; and (2) that appellant, "as plaintiff in the case of Buder v. Buder has no standing to question whether a conflict of interest exists among the defendants", citing 7 C.J.S. Attorney and Client, § 47, p. 827, and Van Veen v. Van Veen, 213 Iowa 323, 236 N.W. 1, 238 N.W. 718. The view we take of the case on the merits, however, makes it unnecessary to determine the latter questions.

Appellant's position on the merits is stated in his brief:

"This case presents a situation where Baron & Freed seek compensation for services rendered (in the accounting suit) on issues in behalf of the corporations and their president, G. A. Buder, Jr., which would prevent the estate of G. A. Buder from acquiring assets of the value of one half of $12,214,620.00, and also by virtue of the accounting suit they are representing the defendants in upholding their claims against the estate of G. A. Buder in the amount of $2,023,652.94. Although Baron & Freed were employed to represent G. A. Buder, Jr., Executor of the Estate of G. A. Buder, they seek compensation from the estate for services rendered to antagonistic conflicting interests. It was the duty of the Executor and his attorneys to bring into the estate all assets that belong to it and to resist all claims against the estate. Because of the bias and prejudice in the minds of the Executor, G. A. Buder, Jr., and his attorneys, Baron & Freed, they cannot prejudge the merits of the issues in the accounting suit in favor of G. A. Buder, Jr., as an individual and G. A. Buder, Jr., as president and holding the controlling stock interests in the defendant corporations. As long as these issues stand, G. A. Buder, Jr., should not represent the estate. Appellant contends that Baron & Freed could lawfully represent either the estate or the additional defendant corporations and G. A. Buder, Jr., but not both sides of these antagonistic conflicting interests."

In support of that contention, appellant cites: Moffett Brothers Partnership Estate v. Moffett, 345 Mo. 741, 137 S.W.2d 507; State, to Use of Miller's Administrator v. Bidlingmaier, 26 Mo. 483; Clark v. Crosswhite, 28 Mo.App. 34; In re Padgett's Estate (Padgett v. Smith), 114 Mo.App. 307, 89 S.W. 886; Rochester v. Gonterman, Mo., 49 S.W.2d 71; Hoffman v. Hogan, 345 Mo. 903, 137 S.W.2d 441; Sluggett v. Phillips, Mo.App., 178 S.W.2d 457; State ex rel. Flick v. Reddish, 148 Mo.App. 715, 129 S.W. 53; Strong v. International Building, Loan & Investment Union, 183 Ill. 97, 55 N.E. 675, 47 L.R.A. 792; In re Buder, 358 Mo. 796, 217 S.W.2d 563; Sun Building & Loan Association of Newark v. Rashkes,

119 N.J.Eq. 443, 183 A. 274. Several of these cases, in accord with universal authority, announce in general terms the rule succinctly stated in Supreme Court Rule 4.06, 42 V.A.M.S.: " * * * It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this section, a lawyer represents conflicting interests, when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose. * * *" In the Moffett case, supra, 137 S.W.2d loc.cit. 511, we quoted with approval from the earlier case of National Hollow Brake Beam Co. v. Bakewell, 224 Mo. 203, 226, 123 S.W. 561, 567: " 'This court has ever recognized and enforced the rule that it is the duty of an attorney to devote his skill and diligence to the interest of his client, and has refused to permit him to act for the adverse party in the same suit, even though his motives were honest.' "

The case of State, to Use of Miller's Administrator v. Bidlingmaier, supra, 26 Mo. 483, cited by appellant, merely holds that where the interests of two estates in course of settlement conflict—as where there is a demand in behalf of one estate to be presented for allowance against the other—the same person cannot act as the administrator of both estates in the matter of obtaining an allowance of the demand. The case of Clark v. Crosswhite, 28 Mo.App. 34, cited by appellant, deals with the right of a claimant against an estate to prosecute that claim against the estate of which he is the acting administrator, and holds that he may not do so. The case of In re Padgett's Estate (Padgett v. Smith), 114 Mo.App. 307, 89 S.W. 886, 889, cited by appellant, holds that where the evidence showed that the curator of the estate of a minor invested his ward's funds in real estate without an order of the probate court, a judgment ordering his removal should be sustained. Neither of the foregoing cases nor the other cases cited supra by appellant shed any light upon whether the facts in the instant case reveal a conflict of interests and no useful purpose would be served by a further discussion of them.

Appellant places strong reliance upon the opinion of this court in the Moffett case, 345 Mo. 741, 137 S.W.2d 507, in support of his contention that Baron & Freed represented conflicting interests in the accounting suit. There, the plaintiff, an attorney, filed a petition in the probate court asking for an allowance for legal services rendered the Moffett Brothers Partnership Estate which was being administered in the probate court of Jackson County, Missouri. Plaintiff served as attorney for the administrator of the partnership estate, as well as attorney for the executor of the estate of John Moffett, one of the partners. An action for partition of land in Kansas owned by the partnership was commenced by Thomas Moffett, the surviving partner. Plaintiff, as attorney for the executor of John's estate and as attorney for the administrator of the partnership estate, intervened in the partition proceeding and alleged that the partnership estate was indebted to John's estate, requiring an accounting. The Supreme Court of Kansas found in the partition accounting suit that the partnership estate was indebted to John's estate for $143,000. Although the principal issue in the partition accounting suit was the claim of John's estate against the Moffett Brothers Partnership estate, plaintiff, as attorney, admitted that he represented both estates in that suit and that it resulted in a judgment for $143,000 against one of his clients. This court held there could be no question as to conflicting interests of the John Moffett estate and the Moffett Brothers Partnership estate in the partition accounting suit and, in view of that fact, the court refused any additional compensation to the plaintiff. The court stated that the picture could better be appreciated by visioning Thomas and John Moffett as living and adversaries in a lawsuit on the same claim of indebtedness and plaintiff representing both of them.

The facts in that case are readily distinguishable from the facts in the instant case. In this case, the petition of the executor, filed in the probate court and which the probate court sustained, sought an order "empowering, authorizing and directing him to employ the firm of Baron & Freed as attorneys to represent [him] as executor of the estate of G. A. Buder, deceased, *in said suit of Oscar E. Buder vs. G. A. Buder and First National Bank in St. Louis.*" (Emphasis ours.) Baron & Freed were not empowered and do not serve as general counsel for the estate. Long prior to the death of G. A. Buder, the partnership between him and the appellant had been dissolved by appellant and there was no administration of the partnership. What appellant contends is that during the existence of the partnership, G. A. Buder misappropriated to his own use and conveyed to the added defendants, as his alter ego, funds and assets in which appellant had an undivided one-half interest. The suit filed by him was a personal action in which he sought an accounting from G. A. Buder for the purpose of determining the amount due, and the prayer of the petition was "that final judgment be rendered * * * against G. A. Buder for such sum and for such properties as may be found to be due plaintiff * *." In that action, and as pleaded in both the second and third amended petitions, appellant seeks not to augment the G. A. Buder estate, as such, but rather to show misappropriation of partnership funds on the part of the senior Buder and the receipt thereof by the added defendants, to the end that appellant may recover from the estate and the added defendants his portion of the amount he claims G. A. Buder, and the added defendants, as the "straw" or "alter ego" of G. A. Buder, wrongfully took from appellant.

Appellant further insists that the supplemental petition and the third amended petition set out a substantial controversy and that there is reasonable cause to believe that G. A. Buder, Jr., and the other added defendants hold Buder & Buder assets, one-half of which are owned by the estate of G. A. Buder, deceased. For the purpose of this opinion, we may assume that contention to be true.

In the prohibition proceeding mentioned supra, State ex rel. Pontiac Realty Company v. Nangle, J., 315 S.W.2d 214, 216, 217, Hyde, J., speaking for this court, tersely summarized the allegations of the supplemental and third amended petitions and appellant's contentions with reference thereto in these words: "*Plaintiff* (appellant in the instant proceeding) *alleges that G. A. Buder withdrew funds of Buder and Buder* (amounting to several millions of dollars) *and placed them in the names of relators as straw parties; * * * that all of these corporations were improperly controlled by G. A. Buder and G. A. Buder, Jr., * * *",* and "*plaintiff contends the facts alleged show that G. A. Buder completely dominated the corporate relators, and acted as if they were completely owned by him, and that the legal entity of these corporations should be disregarded in equity and the acts of these corporations considered as the acts of G. A. Buder.* Under this theory plaintiff says relators hold assets of the partnership as trustees subject to accounting just as he would." (Emphasis ours.)

It is clear that appellant by his own pleadings has placed the executor and the added defendants into a common pool when he alleges that the added defendants are but the "straws" or "alter ego" of G. A. Buder and that they, as such, with the Estate of G. A. Buder, are holding funds and assets fraudulently or voluntarily diverted from the partnership by G. A. Buder during its existence. In so charging, appellant has made the interests of the added defendants identical with that of the executor, to wit: the common defense of appellant's claim. All of the defendants are, therefore, privileged to take precisely the same position that G. A. Buder could and, while living, did take. In that situation, it is unrealistic for appellant to urge that the executor of the Estate of G. A. Buder could

and should seek to recover in behalf of the estate any portion of these assets by proving that they were fraudulently or voluntarily conveyed by the testator to the other defendants.

■ The rule is that neither a fraudulent or voluntary grantor, nor his heirs, nor his administrator, can undo the corrupt or voluntary transaction. Equity leaves the estate where the grantor placed it. Such conveyances are void only as to creditors, *and then only to the extent necessary to pay the debt.* "Satisfy the debt, and the conveyance must stand." Stierlin v. Teschemacher, 333 Mo. 1208, 64 S.W.2d 647, 652–653, 91 A.L.R. 121; Biondo v. Biondo, Mo., 179 S.W.2d 734, 737–739; State Bank of Willow Springs v. Lillibridge, 316 Mo. 968, 293 S.W. 116, 118–119. In the latter case, this court said: "The doctrine is general. A voluntary transfer of any kind is good between the parties. * * * The deceased himself, if living, could not have attacked for fraud his own act. It is the well-established rule that one cannot annul his own contract on the ground that he committed fraud in entering it. It may be urged that the administrator in this case * * * represented the creditors as well as the heirs and distributees, and therefore he could recover property for the estate, which his intestate had fraudulently transferred. That is a misapprehension of his function. It is his duty to preserve and collect the estate for the benefit of all persons interested in it. And in that general sense he represents all who are interested in it, but he does not represent the creditors as against the estate. *On the contrary, he represents the estate as against the creditors where there is a contest between them.*" (Emphasis ours.) See also Zoll v. Soper, 75 Mo. 460, 463, wherein it is said: "Land conveyed by the intestate in fraud of his creditors, is not assets of his estate, and this distinguishes this from the case of Titterington v. Hooker [58 Mo. 593], where the land belonged to the intestate at his death, and was subject to administration. If the land in controversy should be sold for more than may be required to pay plaintiff's demand, *the surplus would not be assets of the estate, but would belong to Mrs. Soper, subject to the demand of any other creditor of her former husband who might maintain his suit against her for the purpose of enforcing its payment by her.*" (Emphasis ours.)

These cases make it clear that, even if appellant establishes his case against any or all of the defendants in Buder v. Buder, the Estate of G. A. Buder will not and could not be augmented or enriched one cent. To the contrary, the estate, of necessity, would be depleted to the extent of any judgment rendered in behalf of appellant against it.

■ We, therefore, hold that Baron & Freed did not represent conflicting interests in the rendition of the legal services alleged in the instant proceeding. It must be understood, however, that we express no opinion as to whether a conflict of interest may have developed subsequent to the period of time for which the petition for allowance of fees is here challenged, nor whether a conflict of interest may yet arise such as would preclude Baron & Freed from representing all of the defendants.

■ Appellant's further contention is that the charges for services rendered by Baron & Freed in behalf of the estate do not exclude services rendered the added defendants and that "this fact was not considered by the circuit court". David Baron testified that the charges made for the services rendered prior to the motion for leave to file the amended petition did exclude any services rendered in behalf of the added defendants. There is no evidence to the contrary. He further testified that subsequent to the filing of the motion for leave to file the third amended petition, on October 15, 1956, he has directly represented all of the added defendants and

that in defending the case of Buder v. Buder he intentionally has not apportioned any of the charges made since that time against them for the reason that the executor is and has been a party to all of the suits; that something like 60,000 shares of Burroughs Adding Machine stock (of great value) were inventoried in the estate; that his analysis of the facts showed the added defendants had really no substantial interest in them; that they were purchased by G. A. Buder, deceased, with his own funds and were given by him to the added defendants; and (inferentially) that the defense of the estate (from which appellant sought to obtain a judgment for one-half of the value thereof) required that the charges for such services be paid by the estate. If the executor and his counsel under the circumstances above set forth agreed upon such charges, and the record shows that they did (and there is no evidence to the contrary), we cannot say that the agreement was unreasonable and certainly there is no evidence that appellant's rights were prejudiced by it. Furthermore, contrary to appellant's contention that the trial court did not consider this testimony, the record shows questions to have been propounded by the court unmistakably demonstrating that the court fully understood the situation, and the judgment sustaining the allowance reflects the court's approval of the charges. The contention must be overruled.

■■ Appellant, in his reply brief, for the first time, asserts that the judgment is excessive. There was no evidence offered by appellant to substantiate that contention. In any event, however, assignments of error presented for the first time in a reply brief cannot be considered. State ex rel. Houser v. St. Louis Union Trust Co., Mo., 248 S.W.2d 592, 594; Berghorn v. Reorganized School District No. 8, 364 Mo. 121, 260 S.W.2d 573, 580.

The judgment should be and is affirmed.

All concur.